USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1863 THERESA MARTIN, Plaintiff, Appellant, v. SHAW'S SUPERMARKETS, INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Morris E. Lasker,* Senior U.S. District Judge] __________________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Scott W. Lang with whom Susan Forgue Weiner and Lang, Xifaras & ______________ ____________________ _______________ Bullard, P.A., Lisa M. Sheehan, Kate Mitchell & Associates, Betsy L. _____________ ________________ __________________________ ________ Ehrenberg and Angoff, Goldman, Manning, Pyle & Wanger, P.C. were on _________ _______________________________________________ briefs for appellant. Betsy L. Ehrenberg with whom Harold L. Lichten and Angoff, ____________________ ___________________ _______ Goldman, _______ Manning, Pyle & Wanger, P.C. were on brief for United Food and _______ _____________________ Commercial Workers Local Union 791 and National Employment Lawyers Association, Massachusetts Chapter, Amici Curiae. Duane R. Batista with whom Sharon R. Burger and Nutter, McClennen ________________ _________________ _________________ & Fish, LLP were on brief for appellee. ___________ ____________________ January 28, 1997 ____________________  ____________________ *Of the Southern District of New York, sitting by designation. BOUDIN, Circuit Judge. This case, presenting a ______________ difficult preemption issue, began in January 1996 when Theresa Martin sued Shaw's Supermarkets, Inc., in Massachusetts state court for alleged violations of state employment-compensation laws. Martin, an employee of Shaw's since 1979, had injured her back in August 1994 while working as a bakery clerk. In September 1994, she began receiving workers' compensation benefits for temporary total disability. Mass. Gen. Laws ch. 152, 34. In March 1995, Shaw's requested that Martin's physician, Dr. James Coleman, establish any necessary work restrictions for Martin. Coleman gave Shaw's a list of physical restrictions and indicated that Martin could return to work if these restrictions were respected. Shaw's then asked Martin to see a second doctor. Based on the second examination, Shaw's offered Martin four weeks of modified duty, to be followed by return to her former position without restrictions. Martin did not return to work. Instead, through her attorney, she again asked for a position fitting the restrictions set by Coleman. Shaw's responded by again offering Martin her former position with no restrictions. When discussion failed to resolve the matter, Shaw's sent Martin a letter in September 1995 informing her that she was -2- -2- terminated. The letter referred to Shaw's "policy and contract language concerning extended periods of absence." On October 19, 1995, Martin reapplied for full-time employment with Shaw's, requesting a position with duties modified as Coleman had recommended. Shaw's did not respond. Later in the month, Martin's union filed a grievance on her behalf under its collective bargaining agreement with Shaw's, alleging that Martin had been unjustly terminated and requesting her reinstatement with reasonable accommodations. Three months later, Martin filed the present action in Massachusetts state court, claiming that Shaw's had violated Mass. Gen. Laws ch. 152, 75A, 75B(2), by failing to rehire her. These sections provide, respectively, that an employee who lost her job as a result of compensable injury must be given rehiring preference by the former employer over non- employee applicants, id. 75A, and that no employer may ___ refuse to hire an employee because she asserted a workers' compensation claim, id. 75B(2). Martin's suit did not ___ contest Shaw's right to discharge her in the first instance. In March 1996, Shaw's removed the action to federal court, premising jurisdiction under 28 U.S.C. 1331, and moved to dismiss, Fed. R. Civ. P. 12(b)(6). The district court granted Shaw's motion, agreeing that Martin's claims were preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. 185. Martin now appeals this -3- -3- ruling. The sole issue on appeal is whether section 301 preempts Martin's state-law claims.1  Section 301 modestly provides only that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. 185. But jurisdiction begat substantive authority. In Textile Workers v. Lincoln ________________ _______ Mills, 353 U.S. 448, 451 (1957), the Supreme Court ruled that _____ this section "authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements." In turn, substantive authority gave rise to preemption. In Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962), the _________ _______________ Supreme Court held that state law is displaced when courts are "called upon to enforce" collective bargaining agreements, because those agreements should be governed by federal doctrine, rather than varying state contract-law principles. Then, two decades later, the Supreme Court said that "the pre-emptive effect of 301 must extend beyond [state-law] suits alleging contract violations." Allis- ______ Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). ______________ _____  ____________________ 1The asserted jurisdictional basis for removal-- preemption--might appear to offend the well-pleaded complaint rule, but where section 301 preemption is concerned, the Supreme Court has held that removal is proper. Caterpillar ___________ Inc. v. Williams, 482 U.S. 386, 393-94 (1987). ____ ________ -4- -4- Just how far beyond has never been precisely settled. Allis-Chalmers preempted a state-law tort claim closely ______________ relating to the handling of a labor-agreement grievance. Shortly thereafter the Court declared that state-law claims-- seemingly of whatever character--are preempted if they "require construing the collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 ______ _______________________________ (1988). Yet recently, the Supreme Court cautioned that section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 114 S. Ct. 2068, 2078 (1994). _______ ________ Nevertheless, Livadas repeated the basic test laid down _______ by Lingle--namely, that section 301 preempts a state-law ______ claim wherever a court, in passing upon the asserted state- law claim, would be required to interpret a plausibly disputed provision of the collective bargaining agreement. Id. At first blush, this might seem a puzzling test: both ___ state and federal courts have authority to enforce collective bargaining agreements, and so to interpret their provisions. See Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 506 ___ ______________________ ________ (1962). The explanation lies in the Supreme Court's concern to enforce arbitration clauses, almost always a feature of labor contracts. If judges construed labor agreements in the first instance, the Court believed that the arbitration process -5- -5- would be undermined, and there might be divergent readings of the labor agreement and interference with the grievance process itself. Livadas, 114 S. Ct. at 2078; Allis-Chalmers, _______ ______________ 471 U.S. at 219. Such an arbitration clause is present in  this case. We thus begin by asking, as we have done in the past, e.g., Quesnel v. Prudential Ins. Co., 66 F.3d 8, 10-11 (1st ____ _______ ____________________ Cir. 1995), whether resolution of Martin's claims would require an interpretation of the collective bargaining agreement. Our premise is that this means a real ____ interpretive dispute and not merely a pretended dispute. Indeed, the Supreme Court has said that the need merely to refer in passing to the agreement will not necessarily preempt. Livadas, 114 S. Ct. at 2078. _______ Martin has alleged violations of Mass. Gen. Laws ch. 152, 75A, 75B(2). Section 75A creates a priority for rehiring: Any person who has lost a job as a result of an injury compensable under this chapter shall be given preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available. The relevant portion of section 75B(2)--a conventional prohibition against retaliation--states that "[n]o employer . . . shall . . . refuse to hire or in any other manner discriminate against an employee because the employee has -6- -6- exercised a right afforded by this [workers compensation] chapter."  If the statutes stopped here, this might be a different case. But both statutory sections also contain a proviso that "[i]n the event any right set forth in this section is inconsistent with an applicable collective bargaining agreement," the agreement shall prevail. Id. 75A, 75B(3). ___ Shaw's argues that both of Martin's statutory claims are inconsistent with the labor agreement; that resolution of this "inconsistency" charge requires interpretation of the agreement; and that the claims are therefore preempted under the Supreme Court's own rubric. It is very doubtful whether, without this last-quoted proviso, Shaw's would have any plausible claim of federal preemption. Massachusetts has an independent interest in regulating injury compensation; and apart from the proviso, the elements of both Martin's state-law claims appear to be independent of bargaining agreement provisions. There are other types of labor preemption, apart from Lingle's "require ______ construing" test,2 but Shaw's does not argue that Martin's state claims would be preempted absent the proviso.  ____________________ 2Broadly speaking, most cases of preemption in the labor field involve conflict, or potential conflict, between state law and federal labor policy. But sometimes the conflict arises out of some source other than the need to interpret a labor agreement. E.g., Livadas; San Diego Bldg. Trades ____ _______ ________________________ Council v. Garmon, 359 U.S. 236 (1959). _______ ______ -7- -7- Rather, Shaw's argues that Massachusetts has as a matter of state law chosen to make the substantive rights conferred ______ by the statutes depend upon their not being "inconsistent" with a labor agreement. This court endorsed just such a reading of the proviso of section 75B, which is identical in substance to the provision of section 75A, in Magerer v. John _______ ____ Sexton & Co., 912 F.2d 525, 529-30 (1st Cir. 1990). And _____________ Magerer merely holds Massachusetts to the literal wording of _______ its own statute. The question remains whether Shaw's labor agreement is colorably inconsistent with Martin's state-law claims. Shaw's best argument rests upon the agreement's "management rights" clause, which states that Shaw's has the "sole right to manage its business including . . . the right[] . . . to hire, assign and promote Employees." Shaw's says that Martin is a former employee seeking to be rehired, that the agreement regulates this subject (but not in a way that protects Martin in this case), and that in all other respects the union has agreed to management's right to choose which former employees to rehire. Martin responds that the "management rights" clause cannot be inconsistent with her state-law claims in this case because she is no longer covered by the agreement. Yet the agreement does give former Shaw's employees some specific priority rights to be rehired. See Collective Bargaining ___ -8- -8- Agreement Art. 12(B) ("Full-time employees laid off because of lack of work when no other full-time work is available shall be offered part-time work [if available] . . . ."). And the "management rights" clause by its terms embraces decisions as to hiring. Martin next says that Shaw's employee handbook guarantees to her the very right to priority in rehiring established by section 75A. The handbook does contain language that is fairly close to the rehiring priority contained in section 75A, suggesting that Shaw's itself treats this priority right (although not necessarily the protection against retaliation) as consistent with its "management rights" clause. But for purposes of construing the "management rights" clause, the handbook is at best a gloss.  Whether the handbook does constitute a gloss and, if so, what weight it should be given are issues of interpreting the collective bargaining agreement. The handbook may well weaken Shaw's reliance on the "management rights" clause; but the handbook may simply be a reference to state law, whose application Shaw's has now rethought in the face of litigation. To entertain Martin's state-law claims would still require a court to interpret the agreement, which is precisely what Supreme Court precedents forbid. Accord Magerer, 912 F.2d at 530. ______ _______ -9- -9- Martin next asserts that any waiver of statutory rights by a union and management in a collective bargaining agreement must be "clear and unmistakable." See Livadas, 114 ___ _______ S. Ct. at 2079 (citations omitted). But Shaw's preemption claim does not depend upon a "waiver" of statutory protections; indeed, it is unclear under Massachusetts law that the statutory protections can be "waived." Cf. Mass. ___ Gen. Laws ch. 152, 75B(3) (limiting waiver). Rather, the statutes themselves expressly withhold protection where it would be "inconsistent" with labor agreements, without requiring the inconsistency to be "clear and unmistakable." We conclude that under Supreme Court and First Circuit precedent, Martin's state law claims are preempted. This is not because the collective bargaining agreement is __ inconsistent with the state claims asserted, but because it may be so and requires interpretation. We could ourselves ___ remove the doubt by interpreting the agreement one way or the other, but this course has been foreclosed in deference to the arbitration clause. As all of this appears to follow logically, the question remains why the outcome may seem faintly troubling. One reason is that Massachusetts' statutory proviso, making the rights conferred yield to inconsistent labor agreements, may be producing some results that the legislature did not intend. When the statutes were enacted -10- -10- in December 1985, Massachusetts might have thought that the proviso was necessary to avoid preemption; the legislature _____ might be chagrined to discover that the proviso has unnecessarily curtailed workers' rights. But this is at best a debatable inference,3 and we have found no helpful legislative history.  Possibly, the proviso could be construed to require more than mere inconsistency. Or a state court could hold that the rights conferred yield only to highly specific provisions in a labor agreement and not to a generic "management rights" clause. But both readings would ignore the explicit language of the proviso. Perhaps the state did intend to defer to the labor agreement even where it assisted the employer. Despite the clear warning sent by Magerer in 1990, Massachusetts has _______ not chosen to amend the statutes. The other reason why the outcome may seem troubling is that it could result in Martin having no claim at all against Shaw's, even for retaliation. This charge is, of course, merely an allegation; but even if it proved to have substance, it would be preempted because of the collective  ____________________ 3Shortly before the legislature acted in 1985, the Supreme Court made clear that section 301 does not "give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation." Allis-Chalmers, 471 U.S. at 212. See also Metropolitan Life ______________ ________ _________________ Ins. Co. v. Massachusetts, 471 U.S. 724, 755-56 (1985) _________ _____________ (holding that state mandated-benefits laws were not generally preempted). -11- -11- bargaining agreement, and yet the agreement may itself provide no remedy. Preemption sometimes does result in a complete denial of remedies for obvious wrong, e.g., Smith v. ____ _____ Dunham-Busch, Inc., 959 F.2d 6, 11 (2d Cir. 1992), but this __________________ is not a result one eagerly embraces.  Various possibilities may cushion this outcome. If the employee handbook is a gloss on the collective bargaining __ agreement, perhaps the language already mentioned may not only defeat the "management rights" defense but also give rise to affirmative obligations on the part of the employer enforceable through arbitration. Or, perhaps arbitration would yield a definitive ruling that the "management rights" clause, and any other clause relied upon by Shaw's, is not "inconsistent" with the rights contingently secured by the statutes.  If all else fails, the union is free to negotiate language that eliminates this issue the next time it renews its labor agreement. The parties entered the current agreement in 1994, well after Magerer was decided, but the _______ absence of such language in the present agreement may be an oversight. All that it would take to prevent preemption is an explicit provision stating that nothing in the agreement is intended to create management rights inconsistent with any workers' rights under sections 75A and 75B. -12- -12- Finally, in a reply brief, Martin and her union (which appears as an amicus and has ably supported Martin) offer a preemption claim of their own. They say that a discharged non-union worker could invoke the Massachusetts statutes and that by allowing the collective bargaining agreement to extinguish Martin's rights, the Massachusetts proviso discriminates against members or former members of unions, thereby offending federal labor policy. This, they say, Livadas itself forbids. _______ Livadas struck down a state administrative practice _______ because it effectively discriminated against union members as compared with non-members, 114 S. Ct. at 2074-75, a preemption theory that has nothing to do with section 301. On the reasoning of Livadas, Massachusetts arguably could not _______ provide that a rehiring priority, or a claim against retaliation, would be made available only to workers who were not members of a union. But here Massachusetts has done nothing of the kind. Instead, the proviso in question permits the union on behalf of its members to craft its own regime (the agreement) and in it, either to preserve or displace another regime (specified provisions of state law). Viewed in the large, there is no discrimination whatever against union members; Massachusetts simply allows the union to negotiate for a -13- -13- different package of benefits. Next time, as we have noted, the union is free to bargain differently. Affirmed. ________ -14- -14-