# United States Court of Appeals
## For the First Circuit

No. 99-2142

BRUCE E. FANT,

Plaintiff, Appellant,

v.

NEW ENGLAND POWER SERVICE CO.; NEW ENGLAND ELECTRIC SYSTEMS;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 486,

Defendant, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya and Lipez, Circuit Judges,
and Casellas,* District Judge.

William F. Scannell, Jr. with whom Richard M. Welsh, Jr. was
on brief for appellant.

David M. Felper, with whom Bowditch & Dewey, LLP, was on
brief for appellees New England Power Company and New England
Electric Systems.

Renee J. Bushey, with whom Feinberg, Campbell & Zack, P.C.,
was on brief for appellee International Brotherhood of
Electrical Workers, Local 486.

*Of the District of Puerto Rico, sitting by designation.

     **LIPEZ, <u>Circuit Judge</u>**. This case, arising from the 1995 termination of Bruce Fant as an employee of New England Power Service Company (NEPSCO), poses a preemption issue under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Fant sought the support of his union, the International Brotherhood of Electrical Workers, Local 486 (IBEW), in challenging the termination, but it declined to represent him. Subsequently, Fant complained of discrimination by his employer and his union to the Massachusetts Commission Against Discrimination (MCAD). He says he withdrew his complaint from the Commission in 1998 and filed a discrimination claim in Worcester Superior Court. The union removed the case to federal court. All of the defendants, the union, NEPSCO, and its parent company, New England Electric Systems (NEES), argued that Fant's state law claims were preempted by the LMRA. The district court awarded summary judgment to the power companies because of preemption and dismissed the claim against the union because it was time-barred. We affirm as to all of the defendants on the basis of preemption.

**Background**

Bruce Fant was employed by NEPSCO for eight years prior to his discharge on June 22, 1995.  He worked much of this time as a first class utility worker in the Maintenance and Construction Department.  In January 1993, Fant hurt his back at work, an injury covered by workers' compensation.  Though he returned to a reduced work schedule, he was laid off shortly thereafter, along with 62 other employees.  Fant sought recall for a light-duty job (he could not be rehired for operation of heavy equipment because of his injury).  Despite his seniority among those laid off, Fant was never recalled.  The IBEW refused to pursue a grievance on his behalf.  He was terminated from employment on June 22, 1995.  In August 1995, the IBEW refused services for the last time, advising Fant that it no longer considered him a member of the union.

Pursuant to Massachusetts General Laws Chapter 151B, Fant filed a discrimination charge against his employer and the union with the MCAD on December 15, 1995, claiming discrimination based upon a speech impediment described as stuttering.  Fant believed that the stutter defeated his candidacy for the light-duty positions he sought because of the communications skills required.  Although the parties describe

the proceedings before the MCAD differently, there is no record in this proceeding of the MCAD's action. In his brief and at oral argument, Fant states that he "removed" the MCAD charge to the Superior Court prior to a final disposition by the MCAD. Defendant IBEW indicates in a footnote to its brief that Fant's charge was investigated and dismissed by the MCAD on June 16, 1997 with a lack of probable cause finding, and that the full Commission affirmed the judgment after Fant appealed.

We do know, however, that on June 3, 1998, Fant filed a complaint in Worcester Superior Court alleging discrimination by the defendants and seeking relief on five counts: negligent infliction of emotional distress, intentional infliction of emotional distress, civil rights violations, interference with contractual relations, and interference with advantageous contractual relations. Six weeks later Fant amended his complaint by changing the previous complaint's "General Averments" portion into a section titled "General Averments of Wrongdoing," now labeled as "Count I." Although these general averments do not refer to any provisions of Massachusetts law, Fant says they constitute his state law discrimination claim.

The IBEW removed the case to federal court under 28 U.S.C. § 1441, arguing that the action was governed by federal

law, specifically § 301 of the LMRA, which provides a federal cause of action in "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185. Seeking summary judgment, NEPSCO and NEES argued successfully that the federal law preempted the state claims. The IBEW also prevailed in its contention that Fant failed to state a claim against it because the applicable statute of limitations had expired. These successes prompted this appeal.[1]

## II.

**The state law discrimination claim**

Before addressing the preemption question, we must determine the scope of Fant's state law discrimination claim. Because of a troubling factual discrepancy in the parties' accounts of proceedings before the MCAD, and uncertain drafting in Fant's complaint, this is not a simple determination.

### A.    Speech impediment: Chapter 151B

On appeal, Fant insists that he has stated a claim under Chapter 151B, the Massachusetts omnibus anti-

---

[1] The district court disposed of the state law claims for emotional distress and tortious interference when it found them preempted by federal law. The state civil rights claim was deemed inadequate for failing to allege, among other things, "threats, intimidation, or coercion." Fant has not appealed these determinations.

discrimination statute, on the basis of a stuttering disability. He relies for this contention on this allegation in his complaint: "plaintiff was terminated from his employment as a result of wrongful, illegal, unlawful and discriminatory actions of the employers and representatives, which actions were solely based upon the plaintiff's disabilities." Fant says that the use of the term "disabilities" in this allegation includes discrimination based upon a stutter and a work-related back injury. However, only the work-related injury is specifically identified in the complaint.

A party who wants to file a civil action charging discrimination in employment under Chapter 151B must first file the charge with the MCAD. The purpose of mandatory submission to the MCAD process is to provide notice to the prospective defendant and to encourage conciliation and settlement of disputes. See Stephenson v. State Street Bank & Trust Co., 924 F. Supp. 1258, 1276 (D. Mass. 1996). Once a charge is filed with the MCAD, a complainant may proceed in one of two ways: 1) seek a Commission decision on the discrimination charge, followed by judicial review on the administrative record of an adverse determination, ch. 151B §§ 5 and 6, or 2) obtain permission from the MCAD to withdraw from the administrative process, without prejudice to the charge, so that a statutory

claim can be filed in state Superior Court, ch. 151B § 9.  See

Jancey v. School Comm., 658 N.E.2d 162, 171-72 (Mass. 1995).  As

noted, Fant says he took the withdrawal route.  The IBEW says he

obtained an MCAD decision on the discrimination charge.

Ordinarily, we would seek clarification from the parties about

such an odd conflict.  We refrain from that inquiry, however,

because Fant's speech impediment claim fails whatever the route

taken.

### 1.  An MCAD decision

Although the "Charge of Discrimination" document Fant

filed with the MCAD was not part of the record before the

district court, Fant has included that document as an addendum

to his brief on appeal.  We consider that document for the

limited purpose of evaluating Fant's insistence that the state

claim he filed in the Superior Court included a claim that he

was discriminated against because of his speech disability.

In the "Charge of Discrimination" document, Fant states

specifically that the disability at issue is "the speech

impediment commonly referred to as stuttering."  He also states

specifically that his job-related back injury "is not part of

the claim filed with the Commission."  If Fant pursued his

speech impediment claim to a final resolution by the MCAD, as

the IBEW says he did, Fant's access to the state Superior Court

-7-

would be limited to judicial review of the administrative determination, not the original action Fant filed here.  "By providing for judicial review of MCAD decisions, and by foreclosing agency action once a party has sought a judicial remedy pursuant § 9,[2] the Legislature signaled its intent that the parties would be bound by an MCAD decision, subject only to judicial review."  Brunson v. Wall, 541 N.E.2d 338, 342 (Mass. 1989).  Put most simply, the state Superior Court would be precluded by statute from considering Fant's speech impediment claim in an original action if he pursued that claim to a final resolution before the MCAD.  See Joseph v. Wentworth Inst. of Tech., No. 99-10989-MEL, 2000 U.S. Dist. LEXIS 16160, at *29 (D. Mass. Oct. 23, 2000) ("Under Massachusetts law, a Final Commission Order of the MCAD is given preclusive effect to bar a plaintiff from bringing a new court action.").

---

[2] Section 9 of Massachusetts General Laws, Chapter 151B provides for removal of the matter from the MCAD prior to a final disposition.  The statute reads: "Any person claiming to be aggrieved under [151B]. . . may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing, but no later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both in the superior or probate court for the county in which the alleged unlawful practice occurred. . . . The petitioner shall notify the commission of the filing of the action, and any complaint before the commission shall then be dismissed without prejudice."

-8-

## 2. Removal of the charge from the MCAD

Alternatively, accepting Fant's insistence that he removed his speech impediment claim from the MCAD before a final resolution, we must assess whether the specifics of the MCAD charge inform the meaning of "disabilities" in Fant's Superior Court complaint. It is appropriate for a court to consider the MCAD charge when the "charge is referenced in [the complaint] and its content determines the parameters of [the] civil complaint." Edwin v. Blenwood Assoc. Inc., 9 F. Supp. 2d 70, 72 (D. Mass. 1998) (relating to the disputed scope of the MCAD charge). True, we have ruled that when "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document . . . , that document effectively merges into the pleadings" when the complaint makes reference to or is attached to that document. Bedall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). See also Chatman v. Gentle Dental Ctr., 973 F. Supp. 228, 232 (D. Mass. 1997) ("[O]n a Rule 12(b)(6) motion, the court may consider public records and other documents referred to in the complaint, without treating the motion as one under Rule 56. The MCAD Charge is a public record and is also referred to in the complaint." (citation omitted)).

-9-

However, Fant's complaint does not reference the MCAD charge, nor does it even reference Chapter 151B, the state's employment discrimination statute, which Fant says on appeal is the basis for his speech impediment claim. Yet Fant refers specifically to his work-related injury. Moreover, Fant's complaint is not dependent on a previous charge filed with the MCAD because his claim under Chapter 152, § 75B, see infra, does not require a prior filing with the MCAD.[3] Under these circumstances, the mere plural reference to "disabilities" in Fant's complaint does not provide fair notice that he is also claiming discrimination on the basis of a speech impediment.

Not surprisingly, the district court does not even mention the speech impediment in its decision disposing of Fant's claims. Instead, it focuses only on the work-related back injury. Furthermore, the court summarily denied Fant's

---

[3] We note one important caveat about the relevance of the MCAD charge. The Massachusetts cases make clear that the 151B charge of employment discrimination that is filed before the MCAD establishes the parameters of the claim in a subsequent civil action in Superior Court. See Edwin, 9 F. Supp. 2d at 73 ("A civil complaint for employment discrimination is confined to the content of the charge filed with MCAD and claims reasonably within the scope of an MCAD investigation."). If defendants to a civil action for employment discrimination believe that the 151B charge of employment discrimination exceeds the scope of the administrative charge, they could seek dismissal for failure to exhaust the administrative remedy. There is no such claim here. We do not have to examine the MCAD charge to evaluate a failure to exhaust claim.

motion for reconsideration of its summary judgment ruling.  In that motion, Fant contended that the court overlooked his allegations of "tortious conduct" by the defendants based upon his speech impediment.[4]  Implicit in the court's summary denial of the motion is confirmation of its initial judgment that a Chapter 151B discrimination claim based on Fant's speech impediment is not in Fant's complaint.  We agree.  It is not there.[5]

**B.  Work-related injury: Chapter 152, § 75B**

Chapter 152 of the Massachusetts General Laws is the state workers' compensation law.  Chapter 152, § 75B bars

---

[4] By referencing the motion for reconsideration we do not suggest that Fant has perfected an appeal from the denial of that motion.  Appellees assert correctly that Fant filed a notice of appeal after the entry of summary judgment, but prior to the court's final disposition of the motion for reconsideration.  According to Fed. R. App. P. 4(a)(4)(B)(ii), a notice of appeal must be amended to include review of such a ruling.  Fant never amended his notice of appeal.  Nevertheless, in our view, Fant could argue, pursuant to the notice of appeal from the district court's entry of summary judgment, that among the court's errors was a failure to recognize a 151B speech impediment claim.  We discuss the motion for reconsideration only to emphasize the district court's view that Fant failed to set forth a 151B claim.

[5] Fant suggests, in the alternative, that the defendants brought the MCAD charge into the case when they referenced the MCAD proceedings in their affidavit and memorandum pertaining to the motion for summary judgment. However, the defendants merely recited the filing of an administrative complaint in describing the history of the case.  That reference does not bring the substance of the MCAD charge into this case.

discrimination against qualified handicapped workers exercising their rights under the workers' compensation law, which includes procedures for filing claims for injuries, receiving payments, and determining re-employment. The statute provides in pertinent part that "[n]o employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter." Mass. Gen. Laws ch. 152, § 75B(2). Although Fant's complaint also fails to invoke specifically Chapter 152, § 75B, he alleges that he "suffered a work related injury and was seperated [sic] from his employment" based upon his "disabilities."

Fant asserts a violation of § 75B because he was a qualified handicapped person capable of performing the essential functions of a particular job with reasonable accommodation, despite his work-related injury.[6] In his complaint, he cites his work-related injury, his separation from employment, and the subsequent refusals to rehire, "despite his seniority over other

_____

[6] Unlike a civil action for employment discrimination under Chapter 151B, a civil action for discrimination under Chapter 152, § 75B does not have to be preceded by an administrative complaint before the MCAD. Pursuant to the statute, "[a]ny person claiming to be aggrieved by a violation of this section may initiate proceedings in the superior court department of the trial court for the county in which the alleged violation occurred." Mass. Gen. Laws ch. 152, § 75B(2).

individuals who were re-employed by the defendant after his said seperation [sic] of service." Fant also indicates that he sought the services of the IBEW in an effort to regain his employment, but it refused to represent him saying "that he was no longer considered a member of the union." Given his specific reference to a work-related injury, the district court found that Fant alleged a § 75B claim under the state workers' compensation law. We accept this reading.

In that claim, Fant asserts that his termination "was in violation of the Collective Bargaining Agreement entered into by defendants, NEPSCO and IBEW," a contention that is incorporated into each count of the complaint. Under the state statute, the protections of § 75B are subordinate to the terms of any collective bargaining agreement (CBA) between the employee's union and employer. "In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail." Mass. Gen. Laws ch. 152, § 75B(3).

Having found that the amended complaint alleged a claim under Chapter 152, § 75B, the district court also concluded that the state "law upon which Fant relies expressly states that the rights it creates are not independent of collective bargaining agreements." Furthermore, "[d]etermining whether [the CBA] is

-13-

consistent with the workers' compensation law. . . would require interpreting the collective bargaining agreement," an analysis that the court could not pursue "because of the preemptive effect of the federal law governing relations between labor and management," a reference to the LMRA.

**III.**

**Preemption**

As noted, § 301 of the LMRA allows a "[s]uit for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a)(1982). State law claims implicating rights and duties under a CBA may be preempted by § 301. "[T]he question which controls preemption disputes under section 301 is, simply, whether a state law action is based, in its essence, on a claim of rights or duties under a collective bargaining agreement." The Developing Labor Law, 1699 (Patrick Hardin et al. eds., 3d ed. 1992) (1971). Employers have an obligation to comply with the terms of the CBA and unions have a corresponding duty of "fair representation," meaning that they must not engage in "arbitrary or bad faith conduct" that evidences "hostility, discrimination, or dishonesty" toward an employee-union member. Figueroa de Arroyo v. Sindicato de

<u>Trabajadores Packinghouse</u>, 425 F.2d 281, 284 (1st Cir. 1970) (involving union action in a grievance proceeding).

Fant does not assert a claim under the LMRA. Indeed, he disavows one. Nevertheless, his state law claim alleging discrimination by NEPSCO and NEES, and breach of representation duties by the IBEW, is tantamount to a hybrid cause of action governed by § 301 of the LMRA.

Hybrid claims involve alleged wrongdoing on the part of both the employer and the union with respect to the rights of employees. "If, in an action alleging a breach of the duty of fair representation, the employee seeks relief for a related breach of contract by the employer, the employee's claim against the employer is 'based upon' a breach of the labor contract within the scope of section 301." <u>The Developing Labor Law</u>, at 1418. In these hybrid cases, the court must resolve whether the union failed in fairly representing the employee and whether the employer acted in violation of the CBA terms. The Supreme Court has found these parallel claims against the parties to a CBA to be "inextricably interdependent." <u>DelCostello</u> v. <u>International Brotherhood of Teamsters</u>, 462 U.S. 151, 164 (1983). The component parts of a hybrid § 301 claim, the employer's breach of the CBA and the union's failure to defend employee rights under the CBA, each require interpretation of the terms set

forth in the labor agreement.  In creating § 301 of the LMRA, Congress intended "that a comprehensive, unified, body of federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements."  The Developing Labor Law, at 1698-99.  As such, state law claims that require interpretation of a labor contract for adjudication are generally preempted by the federal law.  See id.

Despite the preemptive scope of § 301, state law claims survive if they do not require interpretation of the CBA.  See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 409 n.8 (1988) ("§ 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective- bargaining agreement").  The degree to which a state law claim depends upon an understanding of the CBA requires careful judicial analysis.  "Courts confronted with state law claims must. . . locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims." Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 10 (1st Cir. 1999). See also Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) (checking wage rates set

forth in the CBA does not rise to interpretation).[7]  As we have put it, a "real interpretive dispute" regarding the CBA must exist for other claims to be preempted.  <u>Martin</u> v. <u>Shaw's Supermarkets, Inc.</u>, 105 F.3d 40, 42 (1st Cir. 1997).

A state law claim may depend upon the meaning of the CBA if the conduct at issue constitutes a breach of duty under the CBA or resolution of the dispute hinges upon interpretation of the CBA.  <u>See</u> <u>Flibotte</u> v. <u>Pennsylvania Truck Lines, Inc.</u>, 131 F.3d 21, 26 (1st Cir. 1997).  Both tests are met in this case. As best we can tell from the complaint, Fant's case involves recent leave-time for recovery from a work-related injury, a lay-off, a subsequent request for reassignment to a different type of job, seniority, and his availability for immediate reemployment.  Disputes relating to such matters are usually CBA-based disputes because the rights at issue are created by the agreement.  <u>See</u> <u>Allis-Chalmers Corp.</u> v. <u>Lueck</u>, 471 U.S. 202,

---

[7] In cases alleging a violation of a state law without asserting a breach of the CBA, the action need not be preempted by federal law.  <u>See</u> <u>Welch</u> v. <u>General Motors Corp.</u>, 922 F.2d 287 (6th Cir. 1990).  In <u>Welch</u>, the plaintiff's claim against the employer concerned rights established by the Michigan Handicapper's Civil Rights Act.  The court affirmed the district court's ruling that independent state statutory rights could be asserted, even if the CBA also provided a remedy for discrimination.  In such cases, the court generally reasons that the rights created by the state law are independent, non-negotiable and "not inextricably intertwined with the collective bargaining agreement."  <u>Id.</u> at 290.  <u>See</u> <u>also</u> <u>Livadas</u>, 512 U.S. at 124-25.

218 (1985).  Similarly, questions relating to qualifications and seniority usually require recourse to details that are imbedded in CBAs.  See O'Brien v. Consolidated Rail Corp., 972 F.2d 1, 5 (1st Cir. 1992) (regarding Chapter 151B and Railway Labor Act preemption); Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. 330 (D.Conn. 1995).

In this case, the "Agreement as to Wages, Working Conditions and Seniority" establishes a procedure for laying off and rehiring workers:

> When forces are reduced in any class of work, the last man hired into the class shall be furloughed first and so on. . . . When forces are increased in any class, preference for reemployment shall be given to furloughed employees defined as "regular employees"[8]. . . , the last man furloughed to be the first rehired, if available for immediate reemployment and so on until the required force has been obtained or until all furloughed employees have been reemployed.

Article V.  Fant's entitlement to employment can only be resolved by referring to the terms of the CBA.  Furthermore, Fant's claim of failed representation by the union upon his termination is governed by Article VI of the CBA, which says, "Upon the written request of the Brotherhood. . . the Company shall grant a hearing to the [suspended or discharged] employee.

---

[8] The CBA defines a "regular employee" as "any employee who has been employed by the Company for a continuous period of one year preceding the date hereof or who may be employed by the Company for a continuous period of one year during the term of this agreement."  Article II.

-18-

. . . The hearing shall be conducted in accordance with the method of adjusting grievances as provided in Article VIII [of the CBA]."  Finally, the CBA contains a broad management rights clause:

> The Brotherhood agrees. . . not to hinder or interfere with the management of the Company. . . , including the assignment of work, the direction of work forces, the right to hire, suspend, or discharge for proper cause, to transfer employees. . . and to furlough employees. . . , but, in the exercise of these responsibilities in management, the Company agrees that it will not discriminate against any member of the Brotherhood.

Article IX.  A similar clause in Martin played a role in our decision that the plaintiff's claim was preempted because it could not be resolved without interpreting the CBA.  See 105 F.3d at 43-44.  That is also the case here.  Fant's state claim of discrimination under Chapter 152, § 75B is preempted by § 301 of the LMRA because it requires interpretation of the CBA.

Fant virtually invited this preemption conclusion in his complaint, where he alleged that the treatment constituting the substance of his grievance "was in violation of the Collective Bargaining Agreement entered into by and between the defendants, NEPSCO and IBEW."  Moreover, given our precedents, the preemption conclusion is not surprising.  We have dealt previously with claims under Chapter 152, § 75 and preemption.

-19-

See Martin, 105 F.3d at 44 (finding both § 75A[9] and § 75B preempted); Magerer v. John Sexton & Co., 912 F.2d 525, 529-30 (1st Cir. 1990) (preemption of § 75B).  In those cases, we found that § 75B claims for retaliatory discharge are subject to the CBA by the express terms of the statute.  See Mass. Gen. Laws ch. 152, § 75B(3).  Indeed, there need not be an explicit finding of inconsistency for claims under this section to be preempted.  As we have said, the state law claims are preempted "not because the collective bargaining agreement is inconsistent with the state claims asserted, but because it may be so and requires interpretation."  Martin, 105 F.3d at 44.  See also Magerer, 912 F.2d at 529 ("[C]laims under section 75B will require interpretation of the agreement and, therefore, will be preempted by Section 301.").

As Fant himself acknowledges, his § 75B claims against his employer and union inescapably require resort to the CBA. Those claims are preempted by § 301 of the LMRA.[10]

**Affirmed.**

---

[9] This statute gives an employee "preference in hiring by the employer for whom he worked at the time of compensable injury. . . ."  Mass. Gen. Laws ch. 152, § 75A.

[10] Because we find that Fant's state law claim is preempted by federal law, and because Fant has not pursued a § 301 claim, we need not determine whether a § 301 fair representation claim against the union would be timely under the applicable statute of limitations.

-20-