# United States Court of Appeals
## For the First Circuit

No. 00-2551

DONALD E. SULLIVAN,

Plaintiff, Appellant,

v.

RAYTHEON COMPANY,
RAYTHEON DISABILITY TRUST, AND
METROPOLITAN LIFE INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Stearns, District Judge.[*]

Frederick T. Golder, with whom Bernstein, Golder & Miller, P.A., was on brief for appellant.
Stephen S. Churchill, with whom James F. Kavanaugh, Jr. and Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP were on brief for appellees.

_____

[*] Of the District of Massachusetts, sitting by designation.

**LIPEZ, Circuit Judge**. Donald Sullivan appeals from the judgment of the district court granting summary judgment in favor of his employer, Raytheon, on claims of employment discrimination and violations of the Employee Retired Income Security Act (ERISA). Sullivan alleges that Raytheon discriminated against him on the basis of disability and age in refusing to reinstate him to his position at Raytheon. Sullivan also argues that Raytheon's failure to reinstate him constituted discriminatory retaliation for Sullivan's application for workers' compensation benefits and his filing a charge with the Massachusetts Commission Against Discrimination (MCAD). In addition, Sullivan asserts that Raytheon and the claims administrator of Raytheon's long term disability benefits plan, Metropolitan Life Insurance Company (MetLife), wrongly denied his application for disability benefits and violated ERISA in not furnishing him documents about Raytheon's disability plan. Finding no error in the determinations of the district court, we affirm.

## I. Background

Sullivan began his employment as a security guard with Raytheon in 1965. Between 1971 and 1990, he suffered seven

industrial accidents that caused injuries to his neck, lower back, and legs. Sullivan sought medical treatment for some of these injuries and occasionally missed work. Shortly after Sullivan's seventh accident in 1990, his absenteeism from work increased. After giving him a written warning in June 1990 and imposing a suspension for abuse of Raytheon's sick leave policy in September 1991, Raytheon terminated Sullivan's employment on March 31, 1992.

Sullivan filed a grievance pursuant to the collective bargaining agreement between Raytheon and his union, the Raytheon Guards Association (the Union), challenging his termination. After a hearing on August 10, 1995, the arbitrator found that Sullivan had been terminated without just cause. However, noting that "on a current and prospective basis, [Sullivan] is not able to work," the arbitrator ordered Sullivan reinstated retroactive to March 31, 1992 on "inactive employment status" so that Sullivan could apply for disability benefits under Raytheon's long term disability plan (the LTD plan). Shortly after the arbitrator's decision, Sullivan wrote to Raytheon and requested information about the long-term disability plan so that he could apply for benefits.

Under Raytheon's LTD plan, benefits are payable for twenty-four months for an employee who is "fully disabled"; they

are payable indefinitely for an employee who is "totally disabled." In statements provided to plan participants, employees are informed that they are fully disabled if "because of a sickness or an injury you cannot do your job." An employee is totally disabled if "because of sickness or injury: (a) you can not do your job; and (b) you can not do any other job for which you are fit by your education, your training, or your experience."

Sullivan submitted an application for long-term disability benefits in November 1995. MetLife, the claims administrator responsible for determining a participant's eligibility under the plan, denied his claim in March 1996. Metlife stated that there was "inadequate evidence of a disabling condition that would prevent him from performing his occupation as a Guard from April 1, 1992 through the present." In addition, MetLife concluded that Sullivan's application for benefits was untimely. Sullivan appealed the denial of benefits to MetLife.

Sullivan also applied for workers' compensation benefits.[1] On August 4, 1994, an administrative law judge for

---

[1] It is not clear from the record when Sullivan applied for workers' compensation. Because the decision awarding him benefits states that Sullivan's claim was conferenced on July 18, 1994, we assume that his application was dated prior to that time.

the Massachusetts Department of Industrial Accidents (DIA) found that Sullivan was partially disabled as of March 22, 1992, and totally disabled as of October 12, 1994. Sullivan received workers' compensation benefits until 1998, when he exhausted his entitlement to them.

Sullivan requested reinstatement to Raytheon by letter dated June 18, 1996. In that letter, he stated that either he was totally disabled, in which case he should receive long-term disability benefits, or he was not disabled, in which case he sought reinstatement to a position with or without reasonable accommodation. By letter dated July 10, 1996, Raytheon advised Sullivan that it would not consider reinstating him until after MetLife considered Sullivan's appeal from its denial of his claim for benefits. Sullivan filed a charge of discrimination with the MCAD on October 9, 1996.

On October 17, 1997, MetLife determined that Sullivan was fully disabled for the first twenty-four months of his disability through April 30, 1994 because he was not capable of performing his job as a security guard, and thus entitled to benefits during that time.[2] In this respect, MetLife's decision

_____

[2] Although MetLife stated in its letter of October 1997 that it was "reinstating" Sullivan's claim to benefits through April 30, 1994 because he was fully disabled, he did not actually receive any benefits under the plan because his social security benefits and workers' compensation benefits reduced his benefits

-5-

of October 1997 differed from its denial of benefits in March 1996. However, MetLife affirmed its previous determination that Sullivan was not totally disabled because he was not disabled from all occupations for which he was fit by his training or experience. Accordingly, MetLife terminated his benefits. Sullivan's appeal of that determination to MetLife was denied.

Sullivan filed suit in Massachusetts Superior Court on November 3, 1998. His three-count complaint included the following claims: (1) that Raytheon discriminated against him on the basis of disability and age and engaged in discriminatory retaliation in violation of Mass. Gen. Laws ch. 151B; (2) that Raytheon retaliated against him for filing a worker's compensation claim in violation of Mass. Gen. Laws ch. 152, § 75B; and (3) that Raytheon violated his rights under the Employees Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. Raytheon removed the case to federal district court.

In October 1999, the district court granted Raytheon's motion to dismiss the retaliation claims in count one and two. Because the parties submitted evidence outside the pleadings in arguing this motion, we treat the district court's ruling as one on summary judgment. See Davis v. Lucent Tech., Inc., 251 F.3d 227, 231 (1st Cir. 2001). The district court granted summary

under the plan to zero.

-6-

judgment in favor of Raytheon on the remaining counts in October 2000.  Sullivan appeals these rulings.

## II. Claims of Discrimination

Sullivan argues that the district court erred in granting summary judgment in favor of Raytheon on his claims of disability and age discrimination and retaliation.  We review the district court's entry of summary judgment de novo, viewing the record in the light most favorable to Sullivan.  See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  "Summary judgment is appropriate only if 'there is no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56 (c)).

## A. Disability Discrimination

To establish a prima facie case of disability discrimination under chapter 151B of Massachusetts law, Sullivan must demonstrate that he is a "qualified handicapped person." See August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992); Labonte v. Hutchins & Wheeler, 678 N.E.2d 853, 859 (Mass. 1997).  Chapter 151B defines this term as "a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable

accommodation to his handicap."  Mass. Gen. Laws ch. 151B, §

1(16).  Thus, Sullivan must demonstrate that he is capable of

performing, with or without reasonable accommodation, the

essential functions of the position of security guard at

Raytheon.

As the district court noted in its written memorandum

and order, Sullivan has "continually and consistently claimed

that he was totally disabled."  In a 1994 deposition, Sullivan

stated that he believed he was totally disabled from March 1992

(when Raytheon terminated his employment) to the present time.

In another deposition six years later, Sullivan stated that his

condition had stayed the same or worsened since his 1994

deposition.  Sullivan also represented that he was disabled in

applications for social security disability insurance and

workers' compensation benefits.  Additionally, he stated on his

tax returns for the years 1995 through 1998 that his occupation

was "disabled."

These claims of disability do not necessarily preclude

Sullivan's ability to argue now that he is capable of performing

his job with reasonable accommodation. See Cleveland v. Policy

Mgmt. Sys. Corp., 526 U.S. 795, 797 (1999) (holding that pursuit

of benefits under Social Security Disability Insurance (SSDI)

"does not automatically estop the recipient from pursuing an ADA

claim"). However, to defeat Raytheon's motion for summary judgment, Sullivan must explain why the representations of total disability he has made in the past are consistent with his current claim that he could perform the essential functions of a security guard at Raytheon with reasonable accommodation. See id. at 798 ("To survive a defendant's motion for summary judgment, [the plaintiff] must explain why that SSDI contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'"). Sullivan has offered no evidence to explain this discrepancy. Accordingly, Sullivan has not demonstrated that he is a "qualified handicapped person" for purposes of chapter 151B, and summary judgment in favor of Raytheon was proper. See August, 981 F.2d at 584 ("Having conceded that he was totally disabled at all relevant times, [the plaintiff] cannot now establish that he was a 'qualified handicapped person' and thus cannot make the prima facie case required to prevail on his claim under Mass. Gen. L. ch. 151B, § 4(16)."). Compare D'Aprile v. Fleet Servs. Corp., 92 F.3d 1, 5 (1st Cir. 1996) (rejecting the reasoning of August where the plaintiff "never claimed to have been totally disabled during the time she requested her accommodation, and demonstrated her ability to work with the accommodation she requested").

Sullivan also contends that the district court erred in granting summary judgment because Raytheon did not engage in "an interactive process" with Sullivan to determine an appropriate accommodation that would allow him to return to his position as a security guard. As Raytheon points out, the ADA's interpretive regulations "may require an employer 'to initiate an informal, interactive process' with the individual seeking accommodation." Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 19 (1st Cir. 1998) (quoting 29 C.F.R. § 1630.2(o)(3)). However, there is no such requirement under Massachusetts law in chapter 151B. Moreover, even if Raytheon were required to have engaged Sullivan in such an interactive process, we found in Soto-Ocasio that an interactive process is not necessary where, as here, no reasonable trier of fact could have found that the employee was capable of performing the job, with or without reasonable accommodation, for which he was seeking reinstatement. See id. Because Sullivan has presented no evidence to indicate that he was capable of returning to work as a security guard, even with a reasonable accommodation, Raytheon was not required to engage with him in an interactive process.

**B. Age Discrimination**

Sullivan also appeals the district court's entry of summary judgment in favor of Raytheon on his claim of age

discrimination under Mass. Gen. Laws ch. 151B, § 4(1B).[3] Sullivan alleged in his complaint that he was more than forty years old at the time Raytheon refused to reinstate him and that Raytheon "hired younger persons to fill positions for which Sullivan was qualified to fill." To establish a prima facie case of discrimination under this statute, Sullivan must prove "by a preponderance of the evidence that (1) he was a member of the protected class; (2) he was qualified for the position in question; (3) he was denied the position; and (4) his employer sought to fill the position by hiring a younger individual with qualifications similar to those of the plaintiff." Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327-28 (1st Cir. 1996) (footnote omitted). As we have explained in our discussion of his claim for disability discrimination, Sullivan failed to show that he was qualified for the position he sought at Raytheon. Accordingly, he cannot establish a prima facie case of age discrimination, and the district court properly entered judgment in favor of Raytheon.

---

[3] Chapter 151B, § 4(1B) provides that it is unlawful "[f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

## C. Discriminatory Retaliation

### 1. Retaliation for filing a charge of discrimination

Sullivan further claims that Raytheon violated his rights under chapter 151B, § 4(4)[4] by engaging in retaliatory discrimination in not reinstating him after he filed a charge of discrimination with the MCAD.  To establish a prima facie case for retaliation, Sullivan had to show that: (1) he engaged in conduct protected under Massachusetts or federal law; (2) he "suffered an adverse employment action"; and (3) "a causal connection existed between the protected conduct and the adverse action."  McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998).  Sullivan's claim falters on the third prong of this test.  He has not demonstrated a causal connection between his protected conduct - filing a charge of discrimination with the Massachusetts Commission Against Discrimination in October 1996 - and Raytheon's refusal to reinstate him to his position as a security guard in July 1996.  Indeed, Sullivan concedes this chronology in the facts section of his brief when he states: "When Sullivan was not given disability benefits, and was not reinstated to a suitable position at Raytheon, he filed a Charge

---

[4] Chapter 151, § 4(4) makes it illegal for an employer "to discharge, expel or otherwise discriminate against any person because he has . . . filed a complaint."

-12-

of Discrimination with the Massachusetts Commission against Discrimination on October 9, 1996." Because Sullivan's protected action - filing a charge of discrimination - occurred <u>after</u> the adverse employment action, we affirm the district court's entry of summary judgment in favor of Raytheon on the retaliation claim.

### 2. Retaliation for filing for workers' compensation

Sullivan also claims that the district court should not have dismissed his claim under Mass. Gen. Laws ch. 152, § 75B.[5] Section 75B "bars discrimination against qualified handicapped workers exercising their rights under the workers' compensation law, which includes procedures for filing claims for injuries, receiving payments, and determining re-employment." <u>Fant</u> v. <u>New England Power Serv. Co.</u>, 239 F.3d 8, 13 (1st Cir. 2001). The district court found that this state law claim was preempted under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.[6] We agree.

---

[5] Chapter 152, § 75B provides in pertinent part: "No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter." Mass. Gen. Laws ch. 152, § 75B(2).

[6] Section 301 of the LMRA establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).

"Section 301 [of the LMRA] completely preempts a state law claim, 'if the resolution of [the] state-law claim depends upon the meaning of a collective bargaining agreement.'" Magerer v. John Sexton & Co., 912 F.2d 525, 528 (1st Cir. 1990) (alteration in original) (quoting Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988)). With respect to the Massachusetts workers' compensation statute, "the protections of § 75B are subordinate to the terms of any collective bargaining agreement" between Sullivan's union and Raytheon. Fant, 239 F.3d at 14. See also Magerer, 912 F.2d at 529 ("[S]uch claims [under section 75B] are, by the express terms of the statute, subject to the terms of any applicable collective bargaining agreement."). The statute provides: "In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail." Mass. Gen. Laws ch. 152, § 75B(3). We have said that this language

> makes clear that to the extent that the collective bargaining agreement provides standards to govern the conduct underlying plaintiff's retaliatory discharge claim, the claim will be governed by the standards of the agreement, rather than by the standards of ch. 152 § 75B. And to that extent, claims under section 75B will require interpretation of the agreement and, therefore, will be preempted by Section 301.

-14-

Magerer, 912 F.2d at 529. We need not find explicitly that the collective bargaining agreement at issue here is inconsistent with section 75B to find Sullivan's claim under that statute preempted. See Fant, 239 F.3d at 16. In similar circumstances, we have found claims under section 75B preempted "not because the collective bargaining agreement is inconsistent with the state claims asserted, but because it may be so and requires interpretation." Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40, 44 (1st Cir. 1997); see also Fant, 239 F.3d at 16 (finding retaliation claim brought under section 75B preempted by the LMRA).

Here, the collective bargaining agreement between Raytheon and the Union contained a management rights clause providing that "the management and control of the Company's business and operations, working force and plant, as well as the direction, supervision and assignment of duties of the Guards, is vested exclusively in the management of the Company." This broad grant of supervisory discretion to Raytheon could conflict with the provisions of section 75B that place limits on Raytheon's ability to refuse to reinstate employees after they have filed a claim for workers' compensation benefits. Because we would have to interpret the agreement to determine whether this clause conflicts with section 75B, Sullivan's claim is

-15-

preempted. See Martin, 105 F.3d at 43-44 (finding claim under chapter 75B preempted because of a potential conflict with the management rights clause of the collective bargaining agreement); Magerer, 912 F.2d at 530 (finding that management rights clause "could be construed to govern the conduct underlying plaintiff's retaliatory discharge claim"). Therefore, the district court correctly concluded that Sullivan's section 75B claim was preempted by § 301 of the LMRA.

We have recognized that this outcome - finding a claim under chapter 75B preempted because of a potential conflict with the management rights clause in a collective bargaining agreement - seems "faintly troubling." Martin, 105 F.3d at 44. However, the union may bargain to avoid this outcome in the future:

> If all else fails, the union is free to negotiate language that eliminates this issue the next time it renews its labor agreement. . . . All that it would take to prevent preemption is an explicit provision stating that nothing in the agreement is intended to create management rights inconsistent with any workers' rights under sections 75A and 75B.

Id. Moreover, even if we found that Sullivan's claim under chapter 75B was not preempted, no rational factfinder could infer a discriminatory animus on Raytheon's part because Raytheon refused to reinstate him more than two years after

-16-

Sullivan filed for workers' compensation.  See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (finding that period of nine months "suggests the absence of a causal connection between the statutorily protected conduct and the adverse employment action").

### III. Termination of Benefits

The district court granted summary judgment in favor of Raytheon, MetLife, and the Trust with respect to Sullivan's claim that MetLife's termination of his disability benefits was arbitrary and capricious.  The parties agree that MetLife had discretion to determine Sullivan's eligibility for benefits.  Where a benefits plan grants discretionary authority to the plan administrator, we review the administrator's decisions to determine whether they are arbitrary and capricious.  See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000); Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998).  "This standard means that [the administrator's] decision will be upheld if it was within [the administrator's] authority, reasoned, and 'supported by substantial evidence in the record.'" Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998) (quoting Associated Fisheries of Maine, Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997)).  Substantial

evidence exists if it is "reasonably sufficient to support a conclusion."  Id.

There is evidence in the record that is reasonably sufficient to support MetLife's conclusion that Sullivan was not disabled from all occupations for which he was fit to perform by his training and experience.  Network Medical Review completed a review of Sullivan's claim file in September 1996.  Based on Sullivan's copious medical records, NMR concluded: "The medical evidence, both subjective and objective, would support a sedentary work environment for Mr. Sullivan. . . . [A] sedentary work environment would not significantly exacerbate this claimant's discomfort or pain, and would not cause further worsening of his medical conditions."  MetLife asked NMR to review Sullivan's file again after providing NMR with two additional medical reports[7] of his capabilities.  In its second report dated October 23, 1996, NMR stated: "Our initial assessment concluded that Mr. Sullivan's physical restrictions prevented him from performing his own occupation, but not from performing any occupation.  The new information does not provide evidence that would alter this conclusion."

---

[7] MetLife provided NMR with the reports of Dr. Maureen Norman and Dr. George Hazel for this second review.  We discuss both of these reports below.

-18-

The evaluation of Sullivan's own physician reflects a similar assessment of his capabilities. In January 1996, Dr. Maureen Norman completed an evaluation of his condition at MetLife's request. While Dr. Norman indicated on her report form that Sullivan was disabled from his own occupation as a security guard, she also indicated that she could not determine whether he was totally disabled from any occupation. Dr. Norman also reported that Sullivan was a candidate for "vocational rehabilitation (retraining for a different occupation)" and physical rehabilitation.

In trying to prove that he is totally disabled within the meaning of the LTD plan, Sullivan relies on the medical opinion of Dr. George Hazel, a physician asked to evaluate him in October, 1994 for the DIA in connection with his claim for workers' compensation. In that report, Dr. Hazel stated that "at the present time [Sullivan] is medically disabled and that the disability is permanent and the level of activity [of] the patient is significantly restricted." However, Dr. Hazel also noted that Sullivan had "numerous unassociated somatic complaints which makes evaluation difficult." For this reason, NMR declined to find, based on Dr. Hazel's evaluation, that Sullivan was totally disabled under the LTD plan. In reviewing Dr. Hazel's report, NMR also noted that some of the symptoms

described by Dr. Hazel were dependent on subjective factors such as Sullivan's willingness to cooperate with the exam.

Based on this evidence, we cannot conclude that MetLife's decision to terminate Sullivan's disability benefits was arbitrary and capricious. The reports from NMR, while acknowledging that Sullivan's work environment should be structured to avoid aggravating his disability, indicate that Sullivan is capable of working in some occupation for which he is trained. See Doyle, 144 F.3d at 186 (affirming denial of long-term benefits where the evidence indicated the plaintiff "was not 'totally disabled from any occupation' because he retained a 'sedentary' work capacity and a potential for further rehabilitation"). Moreover, the report most favorable to Sullivan's claim of total disability, Dr. Hazel's assessment, evaluated his capacity in the context of his claim for workers' compensation benefits and did not consider whether Sullivan was totally disabled from every occupation for which he was fit by training or experience.[8] Therefore, MetLife's decision to

---

[8] Putting the shortcomings of Dr. Hazel's evaluation aside, his conclusion that Sullivan's disability is permanent does not compel a finding that MetLife's termination of Sullivan's benefits was arbitrary and capricious. As we have said, sufficiency of the evidence to support MetLife's determination "does not disappear merely by reason of contradictory evidence." Doyle, 144 F.3d at 184.

terminate Sullivan's disability benefits under the LTD plan was not arbitrary and capricious.

## IV. Penalties for Failure to Provide Plan Documents

Finally, Sullivan appeals the district court's decision not to impose penalties against MetLife pursuant to 29 U.S.C. § 1132(c)(1)[9] for failing to provide documents about the long term disability plan. The district court noted that there was disputed evidence about whether Sullivan did or did not receive the documents, but found that "whether or not he had the plan documents, Sullivan exercised his rights under the plan and provided the type of [medical] information that was required for a decision to be made." Because MetLife "carefully analyzed the medical evidence and relied on it," the district court concluded that Sullivan had not been prejudiced even if Raytheon had not furnished the documents he requested. We review the court's determination for abuse of discretion. See Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588 (1st Cir. 1993).

---

[9] 29 U.S.C. § 1132(c)(1) provides in pertinent part: "Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

As the district court found, Sullivan has offered no evidence that MetLife acted in bad faith in not providing him with the documents in a more timely fashion. Additionally, Sullivan has not demonstrated that he was prejudiced by any delay in receiving the documents. We agree with Sullivan that showings of bad faith and prejudice are not necessary for a court to award penalties under § 1132(c)(1). See id. at 588 ("[P]rejudice and bad faith are not prerequisites for imposition of penalties."). However, the district court did not require Sullivan to prove that Raytheon acted in bad faith or that he was prejudiced. Instead, the court appropriately cited the absence of those factors among the reasons for its decision not to award penalties. Accordingly, we find no abuse of discretion in the district court's ruling. See id. at 588-89 (finding no abuse of discretion where the district court considered the absence of prejudice and bad faith in declining to award penalties).

**Affirmed**.

-22-