**Elizabeth BURGOS, Plaintiff,**

v.

**EXECUTIVE AIR, INC.,
et al., Defendants.**

**Civil No. 95–2399(PG).**

United States District Court,
D. Puerto Rico.

Feb. 12, 1996.

Luis Amauri Suárez Zayas, Santurce, P.R., for Plaintiff.

Gregory T. Usera, San Juan, P.R., for Defendants.

## *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

Plaintiff–Burgos, a former airline flight attendant, brought this suit in the Superior Court for the Commonwealth of Puerto Rico, San Juan Part, in October 1995. She alleged that her former employer, defendant–Executive Air ("Executive"), failed to compensate her as required by Commonwealth minimum and over-time wage laws, 29 L.P.R.A. §§ 245–46M, 271–88.[1] Executive timely removed the case to this Court, contending that Burgos' suit involved a purely federal ques-

---

1. The complaint alleges that while Burgos worked for Executive she (1) worked during her meal periods without receiving the extra compensation required by Article 14 of Law 379; (2) was required and worked in excess of eight hours per day and 40 hours per week without receiving the augmented compensation provided by Law 379 for overtime hours; and (3) accrued vacations, in accordance with the applicable Mandatory Decree, which were not paid, in violation of Law No. 96 of 1956. Complaint at ¶s 4–6.

tion because her state-law claims were preempted by the federal Railway Labor Act (RLA), 45 U.S.C. §§ 151–88. *See* 28 U.S.C. § 1331, § 1337 and § 1441(a).

Before the Court is plaintiff's motion to remand and defendant's response thereto. For the reasons stated herein, plaintiff's motion is **DENIED**. This Court has original jurisdiction over this action. However, because the Court lacks subject matter jurisdiction over this dispute, the matter shall be **DISMISSED**.

## I. Background

The Puerto Rico labor laws under which Burgos brings this suit guarantee, among other things, payment of at least one and one-half of base-rate wages for work done in excess of eight hours per day, accrued vacation time, and rest and meal periods. 29 L.P.R.A. §§ 245–46M (minimum wages), 271–88 (maximum hours). In fact, several of these rights are guaranteed in Art. II, § 16 of the Puerto Rico Constitution.

It is clear from a cursory examination of the Collective Bargaining Agreement (CBA) between plaintiff's union and the defendant (appended to Executive's Response to Plaintiff's Motion to Remand) that the working conditions of Executive's airline flight attendants have the *potential* to conflict with the wage and hour provisions of Puerto Rico law. For example, the CBA does not base compensation on dollars per hour "worked," as that term is usually understood (i.e., hours spent at the job).[2] Rather, a flight attendant's compensation depends on the number of hours actually flown per month, with a requirement that each attendant spend at least 70 hours per month in the air. Thus, a flight attendant's base salary, called a "guarantee," depends on meeting the 70 hour per month minimum, which varies with seniority. Flight time in excess of 70 hours per month is compensated at $12 dollars per hour, regardless of an employee's base rate of pay. An attendant who fails to meet the 70 hour

requirement receives a prorated reduction to his or her guarantee. *See* Article 5 of the CBA.

The CBA recognizes that an attendant is "on-duty" from the time "a flight attendant checks-in at her/his domicile and ends when a flight attendant checks out. . . ." Article 1 of the CBA. Thus, on-duty time can be considerably longer than compensated flight time. However, the length of an attendant's on-duty period does not appear to affect compensation—either base compensation or overtime pay. *See* Articles 5 (Compensation), 7 (Hours of Service) and 8 (Scheduling). In fact, the CBA expressly contemplates that attendants may be "on-duty" for up to 14 hours per duty period. Article 7, § C, of the CBA.

Thus, numerous aspects of the CBA between Executive and Burgos' union appear to have been drafted, and agreed to, without consideration of Puerto Rico's wage and hour laws. Regular work schedules drawn-up in accord with the CBA could conflict with Puerto Rico law. This potential conflict was noted almost ten years ago by Judge Pieras in *González v. Eastern Air Lines, Inc.*, 668 F.Supp. 78, 79 (D.P.R.1987). Over the industry's objections, Judge Pieras noted, "[t]he Minimum Salary Board of Puerto Rico in its Sixth Revision of Mandatory Decree No. 38 made this labor legislation applicable to the air transport industry effective in 1979." *Id.* He added that the Puerto Rico legislature rejected proposals to exempt the airline industry from the Commonwealth's wage and hour laws.[3] *Id.*

## II. RLA Preemption of State–Law Actions

To promote stability in the nationally important transportation industry, the RLA requires that disputes between employees and carriers arising out of the interpretation or application of CBAs must be settled pursuant to the arbitration procedures established by the RLA. *See Int'l Assn. of Machinists v.*

---

**2.** Unlike some other jurisdictions, Puerto Rico law does not define "hours worked." *See Pennsylvania Fed. of BMWE v. Nat'l R.R. Passenger Corp.*, 989 F.2d 112, 114 (3d Cir.1993) (construing the Pennsylvania statute defining "hours worked").

**3.** This history casts doubt on Executive's assertion that "Law 379 was designed to apply to daily laborers whose compensation is measured in predictable and regular hourly increments," and that the law is, therefore, inapplicable to the airline industry. Defendant's Response at 7.

*Street,* 367 U.S. 740, 755–764, 81 S.Ct. 1784, 1792–98, 6 L.Ed.2d 1141 (1961) (discussing the history of federal regulation of the industry). Specifically, the RLA requires carriers and unions to establish "boards of adjustment" to resolve all "disputes … growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184. This administrative process is the exclusive remedy for such so called "minor disputes." *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). Because the federally mandated arbitration process is the exclusive recourse for resolving minor disputes, state-law actions alleging breach of a CBA are preempted.[4] Similarly, federal courts lack subject matter jurisdiction over minor disputes. *Id.*

Less clear is the extent to which the RLA preempts challenges based on state law which do not directly involve the terms of a CBA. The Supreme Court most recently addressed this question in *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). The plaintiff in *Norris* was an aircraft inspector who refused to certify the inadequate repairs done to an aircraft under his supervision. The airline fired him for insubordination. Before exhausting his administrative remedies, the plaintiff brought a wrongful discharge action in state court under Hawaii's Whistleblower

Protection Law. *Id.* at ——, 114 S.Ct. at 2242. The airline argued that the claim was preempted under the RLA, and that the plaintiff should be required to arbitrate his claim.

In holding that the claim was not preempted by the RLA, the Court found that Congress did not intend to "preempt substantive protections extended by the States." *Id.* at ——, 114 S.Ct. at 2245. "Clearly," the Court added, the RLA "does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Id.* at ——, 114 S.Ct. at 2248. "[A]s long as the state-law claim can be resolved without *interpreting* the agreement, the claim is 'independent' of the agreement"— i.e., is based on state law—and, therefore, not preempted by the RLA. *Id.* at ——, 114 S.Ct. at 2249 (emphasis added). The Court found that although Norris' state-law claim "involve[d] attention to the same factual considerations as the contractual determination," resolution of the dispute did not require interpreting the CBA. *Id.* at ——, 114 S.Ct. at 2248. The claim was, therefore, found to be independent of the CBA, and not preempted by the RLA.

The Court decided another labor law preemption case the same term as *Norris,* and offered the following additional guidance for determining when a claim is and is not preempted: "[W]hen the meaning of contract

---

4. This was the case in *Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). The Court found the plaintiff's state law wrongful discharge claim preempted by the RLA. The Court reasoned that since plaintiff's asserted right not to be discharged arose from the CBA, not state law, "petitioner's claim, and respondent's disallowance of it, [stemmed] from differing interpretations of the [CBA]." *Id.* at 324, 92 S.Ct. at 1565. As such, the action was subject to compulsory arbitration under the RLA, therefore preempting state court review. *Id.*

As interpreted by the Courts of Appeals, *Andrews* articulated a broad preemption standard. Thus, in *O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1, 5–6 (1st Cir.1992), the First Circuit held that the RLA preempted a Massachusetts law prohibiting employment discrimination on the basis of a physical or mental handicap.

In a subsequent line of cases involving the Labor Management Relations Act (LMRA), however, the Supreme Court charted a narrower

course for federal preemption. *See Norris,* —— U.S. at ——, 114 S.Ct. at 2249. These cases culminated in *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399 (1988), "a case remarkably similar to [*Norris*]." *Norris,* —— U.S. at ——, 114 S.Ct. at 2249. In *Lingle,* the Court held that the LMRA did not preempt a state-law wrongful discharge claim.

*Norris* reconciles *Andrews* with *Lingle,* and brings the RLA preemption standard in line with the Court's other preemption jurisprudence. *See id. But see, Westbrook v. Sky Chefs, Inc.,* 35 F.3d 316, 317–18 (7th Cir.1994) (finding that *Norris* overruled *Andrews* ).

*O'Brien* is cited approvingly in *Norris* for its purported application of the *Lingle* standard. *Norris,* —— U.S. at —— n. 9, 114 S.Ct. at 2249 n. 9. Whether *O'Brien* remains good law, however, is subject to question. *See, Taggart v. Trans World Airlines, Inc.,* 40 F.3d 269, 274–75 (8th Cir.1994) (criticizing the reasoning of, but also distinguishing, *O'Brien* ).

terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be *consulted* in the course of a state-law litigation plainly does not require the claim to be extinguished...." *Livadas v. Bradshaw,* —— U.S. ——, ——, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) (emphasis added).

At issue in *Livadas* was a California law that required employers to pay all wages due immediately upon discharge, imposed a penalty for failure to pay promptly, and based the statutory penalty on the worker's former wages. Plaintiff, a unionized employee who was discharged by her employer, brought suit in state court alleging that her employer failed to comply with the statute. The employer argued preemption. The Court held that the state-law action was not preempted even though determining the statutory penalty entailed calculating wages according to the terms of the CBA. In so holding, the Court noted that, "[b]eyond the simple need to *refer to* the ... [CBA] in computing the penalty, the ... [CBA] is irrelevant to the dispute." *Id.* at ——, 114 S.Ct. at 2079 (emphasis added). "[T]he primary text for deciding whether ... [plaintiff] was entitled to a penalty was not the [CBA], but a calendar." *Id.*

Thus, *Norris* and *Livadas* hold that if the claimed right arises from state law, and requires only a "consultation of," or "reference

to," a duly ratified CBA, then the claim is not preempted. If, on the other hand, the CBA must be "interpreted," then the RLA preempts the claim. The following discussion will attempt to apply these distinctions in the context of this case.[5]

### III. Discussion

■ Burgos argues that she is seeking to vindicate a right independent of the CBA— one that is guaranteed by the Puerto Rico Constitution and Commonwealth statutes. Her contention, however, is only the first step in the required analysis, for it is also clear that her "right" to overtime pay requires, at the least, some examination of the CBA between her union and Executive.

As discussed above, Burgos had no fixed salary. Her pay depended on meeting the 70 hour minimum, with "hours worked"—which this Court correlates to "on-duty period"[6]— of potentially uncertain relationship to the 70 hour minimum. As Executive points out, resolution of Burgos' claims "will necessarily involve determining whether she has worked up to the guarantee and, if so, whether the pay she received covered all pay for actual work performed or included only guaranteed pay." Response at 7. Thus, Executive argues, Burgos' salary, as well as Executive's compliance with Commonwealth law, can not be determined without "interpretation of" the CBA.[7]

---

5. The Court in *Livadas* acknowledged "that the Courts of Appeals have not been entirely uniform in their understanding and application of the[se] principles," but found that the case was "not a fit occasion ... to resolve disagreements that have arisen over the scope of our earlier decisions." *Livadas,* —— U.S. at —— n. 18, 114 S.Ct. at 2078 n. 18. The Courts of Appeals have not been the only ones having difficulty. *See Rice v. Panchal,* 65 F.3d 637, 644 n. 6 (7th Cir.1995) (discussing the Supreme Court's own inconsistent preemption jurisprudence).

6. Executive does not appear to argue that "hours worked" should be construed to be the 70 hour per month flight minimum/guarantee upon which the CBA based compensation. Even if it did, the Court does not believe that employers may be permitted to so manipulate the factual predicates upon which the Commonwealth's labor laws are premised. *See e.g., Secretary of Puerto Rico v. Grand Union of Puerto Rico,* 93 P.R.R. 702, 707–08 (1966) (holding that hours worked included hours spent in grocery store after closing).

7. Curiously, Executive did not cite *Green Giant v. Tribunal Superior,* 104 D.P.R. 474 (1975). In *Green Giant,* the Puerto Rico Supreme Court held that Puerto Rico's wage and hour laws applied only to work done in Puerto Rico. *Id.* at 501. The Commonwealth government subsequently issued a policy statement effectively relieving most air carriers "from application of the overtime laws because the work performed by some of their employees was outside the territorial limits of Puerto Rico." *Gonzalez v. Eastern Air Lines, Inc.,* 668 F.Supp. 78, 79 (D.P.R.1987) (citing Justice Department Opinion No. 1977–22).

In arguing that the overtime laws are inapplicable in this case, however, Executive has argued preemption, rather than the potential defenses available from *Green Giant* and DOJ Op. No. 1977–22. Accordingly, this opinion is also grounded in preemption analysis, rather than in considerations of the intended scope of the Commonwealth labor laws.

Although she does not cite the case, Burgos' argument essentially mirrors that made by the plaintiff in *Livadas:* The "primary text" for determining whether Executive complied with Puerto Rico's wage and hour laws, she asserts, is not the CBA, but a clock. Her claim depends on the "purely factual" determination of whether she worked longer than the prescribed period, and if so, whether she was compensated accordingly. Thus, to paraphrase *Livadas,* beyond the simple need to refer to the CBA in computing the amount she was underpaid, the CBA is irrelevant.

The difficult question is whether the analysis of the CBA required to resolve Burgos' claim constitutes "interpretation" or "consultation." After due deliberation, the Court finds that vindication of the Commonwealth-based right that Burgos asserts requires interpretation of the CBA, with the consequence that the Court must find the claim preempted by the RLA. This is not because the Court finds a semantic difference between the words "interpret" and "consult" that lends itself to deciding this case. Rather, the Court has surveyed the cases and found that the majority of courts that have been required to construe a CBA in the manner required here have labeled their analysis "interpretation."

Though decided before *Norris, Penn. Fed. of BMWE v. Nat'l R.R. Passenger Corp.,* 989 F.2d 112 (3d Cir.1993), appears most on point.[8] *Penn.Fed.* involved a union challenge to the travel compensation scheme for certain employees. Pennsylvania's law required time and one-half overtime pay for all hours worked in excess of 40 hours in a week, so long as the "employee is required by the employer to be on the premises of the employer." *Id.* at 114 (quoting 34 Pa.Code § 231.1). The Court found that determining what constituted the duties of an employee required "interpretation" of the CBA. Therefore, whether the claimants were "required by the employer to be on the premises of the employer"—the factual predicate triggering the state-law right—required interpretation of the CBA. As a result, the suit was preempted by the RLA. *Id.* at 115.

Together, *Penn. Fed.* and *Livadas* offer insight into what is meant by "interpretation," as opposed to a "reference" or "consultation." Because the employees in *Penn. Fed.* could not determine their status with regard to the right conferred by the state law without applying the terms of the CBA, their rights depended on an "interpretation." This stands in contrast to the plaintiff in *Livadas,* whose status with regard to California's backpay statute was determinable the moment she was fired; the CBA was consulted merely to calculate damages. Thus, when the status of a claimant's rights under state law depend on applying the terms of a CBA—rather than on some independent factual determination—the required construction of the CBA is an "interpretation," and the claim must be preempted under the RLA.

Here, plaintiff's status under Puerto Rico law depends upon the interaction of three separate articles of the CBA. Whether she "worked"—broadly defined as hours "on duty"—more than the statutorily prescribed

---

**8.** The Court has found only a handful of challenges based on state wage and hour laws to duly ratified CBAs. *See e.g., R.J. Corman R.R. Co. v. Palmore,* 999 F.2d 149 (6th Cir.1993) (Kentucky overtime statute preempted by the RLA); *Hull v. Dutton,* 935 F.2d 1194 (11th Cir.1991) (Alabama longevity pay statute preempted).

Another case, cited and briefed by both parties, comes from this district and involves the same statutes at issue here. *Santoni Roig v. Iberia Lineas Aéreas de España,* 688 F.Supp. 810 (D.P.R.1988). Like the plaintiff in the instant case, plaintiffs in *Santoni Roig* "allege[d] that, despite having worked overtime and during rest time and meal periods they were not compensated according to local law." *Id.* at 817. The Court found the claim not preempted by the

RLA. The Court summarized its reasoning as follows: "So long as plaintiffs allege to be entitled to a relief provided by a legal source other than a collective bargaining agreement promoting fair employment practices or legitimate government concerns, the claim will not be preempted by the mandatory arbitration proceedings under the RLA." *Id.* at 813.

This reasoning is inapplicable here. It omits consideration of the effect upon the asserted state-law based right in the event that the right depends upon an interpretation of the CBA. *See Norris,* — U.S. at —, 114 S.Ct. at 2248. In fact, the *Santoni Roig* court did not examine the terms of the controlling CBA at any point in its written decision. For this reason, this Court will not be bound by the holding in *Santoni Roig.*

maximums is not dispositive of her claim since her pay was not tied to hours worked, but rather to her guarantee. Determining whether she was under-paid would require ascertaining her "flight time" both for that week and for the month, as well as her on-duty time. After calculating these figures, the CBA would need to be consulted to determine both base and overtime pay. Then, her total pay, separating her guarantee from overtime pay, would need to be compared to on-duty time in order to calculate her effective hourly salaries (base and overtime). Only at this point could Burgos' status under the law be determined. Such analysis, as discussed above, is interpretation.

Because disputes concerning the interpretation of a CBA are "minor disputes" under the RLA, the Court finds that state court review of the dispute must be preempted.

### IV. The Need to Dismiss for Lack of Subject Matter Jurisdiction

 In other circumstances, having adjudicated plaintiff's motion would discharge the Court's current obligation. However, "[i]t is too elementary to warrant citation of authority that a court has [a further] obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir.1988).

In Part III of this opinion, plaintiff's suit for back-pay under Puerto Rico law was found to be a "minor dispute" as that term is defined in the RLA and interpretive case law. This finding has the practical effect of: (1) conferring federal question jurisdiction upon the Court such that removal from the Commonwealth court is appropriate, due to the RLA's complete preemption of state contract law in this matter; but also, (2) divesting the Court of subject matter jurisdiction on account of the RLA's prescribed grievance mechanism for settlement of all "minor disputes." *Norris*, —— U.S. at ——, 114 S.Ct. at 2244; 45 U.S.C. § 153 First, § 159 Third.

Without subject matter jurisdiction, the Court can proceed no further. Accordingly, the entire matter is herewith dismissed without prejudice.

### V. Conclusion

For the reasons set forth herein, plaintiff's motion for remand is **(Dkt. # 3)** is **DENIED.** Insofar as plaintiff's complaint raises issues subject to compulsory arbitration under the Railway Labor Act, the Court is without jurisdiction to further adjudicate the matter. Therefore, this litigation shall be **DISMISSED** without prejudice.

**IT IS SO ORDERED.**