# United States Court of Appeals
## For the First Circuit

No. 00-1663

MARISOL ADAMES, ET AL.,

Plaintiffs, Appellants,

v.

EXECUTIVE AIRLINES, INC. and/or
AMERICAN EAGLE, etc., ET AL

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Richard P. Wrede, Association of Flight Attendants, AFL-CIO,
for appellants.
Harry A. Rissetto, with whom Vicente J. Antonetti, Goldman,
Antonetti & Cordova, P.S.C., Angel Castillo, Jr., Kara A. Standen and
Morgan, Lewis & Bockius, were on brief for appellees.

July 19, 2001

**LIPEZ, Circuit Judge**.  Marisol Adames and some ninety-three other flight attendants sued Executive Airlines ("Executive") in July 1999 for violation of various Puerto Rico labor laws.  Adames[1] argues that she is entitled to compensation and benefits commensurate with the provisions of Commonwealth law dealing with wages, overtime pay, maternity benefits, meal periods, days off, vacation, bonuses, and sick leave.  She asserts that her right to these benefits exists independently of the terms of the collective bargaining agreement with Executive.  In response, Executive argues that the claims under the labor laws of Puerto Rico are preempted by the Railway Labor Act because they cannot be resolved without interpreting the collective bargaining agreement.  The district court agreed with Executive, dismissing Adames's claim for lack of subject matter jurisdiction.  We affirm.

## I.

**Background**

Executive Airlines is a regional air carrier serving various locations in the Carribean.  The plaintiffs work at least fifty percent of their time within the territorial jurisdiction of Puerto Rico and consider Puerto Rico their domicile.  Adames claims that Executive owes her compensation for the following employment practices, pursuant to

---

[1] We generally use the name Adames in referring to all of the plaintiffs in this case.

the following Commonwealth labor law provisions: requiring uncompensated work time (duty time and standby time) and denying appropriate overtime pay (29 L.P.R.A § 274, et seq.); failing to provide for appropriate maternity leave (29 L.P.R.A § 467); failing to provide compensated meal periods (29 L.P.R.A § 283); failing to provide one day of rest following six days of work and sufficient vacation time (29 L.P.R.A. § 295 and Mandatory Decree No. 38); failing to compensate for sick leave accrued in excess of 26 days (Mandatory Decree No. 38); and failing to pay Christmas bonuses (29 L.P.R.A § 501).

This case was initially filed in the courts of the Commonwealth. Executive then removed the action to federal court, asserting that the claims were preempted by the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., because the dispute required interpretation of the terms of the collective bargaining agreement ("CBA" or "Agreement"). Though Adames asserted that the rights claimed under state law existed independently of the Agreement, the district court dismissed her claim on the basis of its prior decision in Burgos v. Executive Air Inc., 914 F. Supp. 792 (D.P.R. 1996).

In Burgos, the district court evaluated some claims by a former Executive flight attendant seeking compensation for overtime, accrued vacation time, and rest and meal periods. The court concluded that "vindication of the Commonwealth-based right that Burgos asserts

requires interpretation of the CBA, with the consequence that the Court must find the claim preempted by the RLA."  Id. at 796.

The plaintiffs did not appeal the Burgos decision.  Instead, the Association of Flight Attendants of the AFL-CIO, also supporting the flight attendants here, filed a grievance with the American Eagle Airlines' Flight Attendant System Board of Adjustment ("Board"), as prescribed in the RLA.  45 U.S.C. § 184.  In its petition to the Board, the flight attendants framed their grievance as follows: "Whether certain provisions of the collective bargaining agreement conflict with and are thus preempted by Puerto Rican law?  In the event this is found to be true, does Puerto Rican law control in those situations?" Opinion of American Eagle Airlines Flight Attendants System Board of Adjustment, Executive Airlines, Inc. and Association of Flight Attendants, AFL-CIO, Grievance No. 29-99-02-02-87 (Herbert Fishgold, Neutral Chairman, June 22, 1999) [hereinafter System Board of Adjustment Opinion].  Apparently troubled by jurisdictional issues raised by this framing of the grievance, the neutral chairman of the Board worked with the parties in an attempt to clarify the issue before the Board.  However, the parties remained at odds, prompting the chair to ask for written submissions on the jurisdictional issue.  The Board ultimately concluded that it did not have jurisdiction to resolve the dispute before it, stating: "Whether or not particular labor laws of Puerto Rico are applicable to the Company's San Juan-based flight

attendants is not [] an issue for this Board." Id. However, the Board reserved the possibility of later consideration "[s]hould the Association raise an arbitral issue concerning the interpretation of the parties' Agreement." Id.

Following this setback, the flight attendants returned to the Commonwealth of Puerto Rico court with a new lawsuit involving Adames and her fellow plaintiffs. This lawsuit revived the claims made in Burgos and added to the array. As noted, Executive removed the action to the district court and opposed successfully the motion of the plaintiffs to remand on preemption grounds under the RLA.[2] Simultaneous with that ruling, the court, citing to its decision in Burgos, dismissed the claims of the plaintiffs for lack of subject matter jurisdiction "on account of the RLA's prescribed grievance mechanism for settlement of all 'minor disputes.'" Burgos, 914 F. Supp. at 797. Plaintiffs then filed this appeal. Essentially, this is the appeal not taken in Burgos. Indeed, plaintiffs explicitly ask us to rule that Burgos was wrongly decided. We review the district court's determination de novo. See Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd., 189 F.3d 1, 7 (1st Cir. 1999).

**II.**

---

[2] Congress extended the benefits and obligations of the RLA to cover the air transportation industry in 1936, see 45 U.S.C. §§ 181-88, and henceforth the courts have applied the federal law to airline labor disputes before the courts. See Int'l Ass'n of Machinists, AFL-CIO v. Cent. Airlines, Inc., 372 U.S. 682, 685 (1963).

**Railway Labor Act Preemption**

**A.        Legal Framework**

Under the RLA, disputes involving the interpretation and enforcement of agreements covering "rates of pay, rules, or working conditions" are deemed "minor" disputes. 45 U.S.C. § 151a; see also Consol. Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 303 (1989). These minor disputes are resolved by an industry-specific dispute resolution mechanism, in this case arbitration by the System Board of Adjustment. See Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 324 (1972); Consol. Rail, 491 U.S. at 303-04; Rosa Sanchez v. Eastern Airline, Inc., 574 F.2d 29, 32 (1st Cir. 1978). "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes . . . . [A] determination that [a party's] complaints constitute a minor dispute would preempt [] state-law actions." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-53 (1994).

Given that a state law claim requiring interpretation of the CBA is preempted, the key question becomes whether resolution of a dispute "hinges upon" such interpretation. Flibotte v. Penn. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997); see also Hawaiian Airlines, 512 U.S. at 253. If "the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within

the collective bargaining agreement," federal law preempts the claim. Flibotte, 131 F.3d at 26.

However, state law claims may exist independently of the CBA; in fact, "establishment of labor standards falls within the traditional police power of the state." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987). While "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA," Hawaiian Airlines, 512 U.S. at 257 (involving wrongful discharge), other state law rights can be "waived or altered by agreement of the parties." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). State law claims requiring only consultation with the CBA, versus actual interpretation, should not be extinguished. See Livadas v. Bradshaw, 512 U.S. 107, 124 (1994); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 n.12 (1988) ("Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand."). For instance, "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" Hawaiian Airlines, 512 U.S. at 261 (quoting Lingle, 486 U.S. at 407).[3] In addition, a state law claim may rely, in part, on

_____

[3] While Lingle articulated the CBA interpretation test for preemption pursuant to the Labor Management Relations Act, 29 U.S.C. §§ 141-87, see 486 U.S. at 407-11, Hawaiian Airlines adopted the test for

-8-

interpretation of the CBA, but also involve a separate and distinct state law analysis, thereby preserving the claim.  See Lingle, 486 U.S. at 413.

In many cases, however, the state law claims are "inextricably intertwined" with the meaning of terms in the CBA and are thus preempted by federal labor law.  Allis-Chalmers, 471 U.S. at 213.  In such instances, state law "must yield to the developing federal common law, lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions."  Livadas, 512 U.S. at 122.

Other circuits considering state law claims for overtime pay and vacation time almost always find that interpretation of the agreement is necessary for resolution of the claim if the agreement addresses those same subjects and the meaning of the statutory language as applied to the terms of the CBA is unclear.  See Firestone v. Southern Cal. Gas Co., 219 F.3d 1063, 1066 (9th Cir. 2000) (the state claim is not independent of the CBA because the parties "disagree on the meaning of the terms in the collective bargaining agreement for purposes of California law."); Penn. Fed'n of the Brotherhood of Maintenance of Way Employees v. National R.R. Passenger Corp., 989 F.2d 112, 116 (3d Cir. 1993) (finding "travel time" compensation statute preempted due to need for CBA interpretation); Nat'l Metalcrafters v.

_____

application to RLA cases raising the same issue. 512 U.S. at 263.

-9-

McNeil, 784 F.2d 817, 824 (7th Cir. 1986) (state law claim for vacation pay preempted unless "the particular contractual provision is so clear as to preclude all possible dispute over its meaning").

**B.       Application**

This suit inescapably involves the relationship between various labor laws of the Commonwealth and certain terms of the CBA addressing the same subject as the Commonwealth laws. For example, Puerto Rico law relies on conventional pay mechanisms, such as hourly wages, which may not reflect methods of remuneration in the airline industry. The peculiarities of industry-specific wage and benefit structures are apparent in the collective bargaining agreement between the flight attendants and Executive. Nevertheless, Adames argues on appeal that the state law claims can be resolved independently of any CBA interpretation, with simple reference to "the map, calendar, and the clock"[4] for determining the percentage of work conducted in Puerto Rico[5] and the amount of work performed in excess of statutory

---

[4] This formulation derives from Justice Souter's decision in Livadas, where "a calendar" governed assessment of a penalty, not the CBA. 512 U.S. at 124.

[5] The percentage of work performed within the jurisdiction of Puerto Rico is important because of a 1977 opinion from the Commonwealth's Secretary of Justice stating that overtime laws do not apply when more than 50 percent of flight attendants' work occurs outside of Puerto Rico. Likewise, in 1992, the Department of Labor and Human Resources concluded that minimum wage laws do not apply to pilots working more than 50 percent of the time outside of Puerto Rico. For discussion, see the System Board of Adjustment Opinion.

requirements.  To assess this argument, we must look at each claim separately to determine whether the factual predicate triggering application of the relevant Commonwealth labor law requires interpretation of the CBA.  If so, the claim is preempted by the RLA.

1.        **Overtime Pay**

Executive's flight attendants are compensated on a monthly basis according to "hourly applicable rates of pay for scheduled or applicable hours flown whichever is greater."  Agreement Between American Eagle Airlines, Inc. and the Flight Attendants [hereinafter "Agreement"], Sec. 4.  They receive their pay upon fulfillment of a base seventy-two hours of "flight time," calculated as the time between closure of the airplane doors and disembarkation at the destination.  Flight time can be rendered for other blocks of time, such as "deadheading," which pertains to transit time for purposes of covering a trip assignment.  Flight attendants can be scheduled for no more than ninety-one flight hours per month and each duty period may not exceed fourteen hours.

Noting this compensation scheme in Burgos, the district court analyzed it perceptively and persuasively in concluding that Puerto Rico's law on overtime could not be applied without first interpreting the Agreement:

> [P]laintiff's status under Puerto Rico law
> depends upon the interaction of three separate
> articles of the CBA.  Whether she "worked" –
> broadly defined as hours "on duty" – more than
> the statutorily prescribed maximums is not
> dispositive of her claim since her pay was not
> tied to hours worked, but rather to her
> guarantee.  Determining whether she was under-
> paid would require ascertaining her "flight time"
> both for that week and for the month, as well as
> her on-duty time.   After calculating these
> figures, the CBA would need to be consulted to
> determine both base and overtime pay.  Then, her
> total pay, separating her guarantee from overtime
> pay, would need to be compared to on-duty time in
> order to calculate her effective hourly salaries
> (base and overtime).  Only at this point could
> Burgos' status under the law be determined.  Such
> analysis . . . is interpretation.

914 F. Supp. at 796-97.

As in Burgos, the Commonwealth law claim for overtime pay is preempted.

2.        **Uncompensated Work Time**

In addition to "flight time," flight attendants are required to fulfill "duty time" by reporting one hour prior to departure and completing other ground-time tasks.  Agreement, Sec. 7(C).  They are accorded some flight-time credit for duty time.  Agreement, Sec 4(C).  Adames argues that to resolve the claim for uncompensated work time, "the court need only compare the amount of time Adames spent at work within the jurisdiction of Puerto Rico in conjunction with the clock."  Executive asserts that, as with the overtime calculations, the Agreement must be interpreted "to determine whether the hourly rate

that the Flight Attendants receive for flight hours also comprises their compensation for all other on-duty hours." Executive also suggests that this determination may require examination of industry standards and extrinsic evidence related to the collective bargaining process. In Hawaiian Airlines, the Supreme Court noted that cases sometimes turn on "a norm that the parties have created but have omitted from the CBA's explicit language, rather than a norm established by a legislature or a court." 512 U.S. at 264. We agree. Resolving the claim for uncompensated time under the law of Puerto Rico first requires resort to the Agreement and related material.

**3.        Compensation for Standby Time**

The scheduling of flight attendants requires them to perform a certain amount of "reserve time," which can be either "standby reserve" at the airport or "ready at home" time when they are on call. Agreement, Sec. 9. These blocks of time are not counted toward the "flight time," which is the basis for the flight attendants' compensation. Adames argues that the flight attendants receive no compensation for this standby time. Executive replies that the compensation scheme is intended to cover "reserve time" and that this determination requires CBA interpretation and consideration of industry practices. We agree.

**4.        Maternity Leave**

Puerto Rico's statute allows a pregnant woman to take one to four weeks of prenatal rest and four to seven weeks of postnatal rest. 29 L.P.R.A. § 467. The CBA provides that "[m]aternity leave shall be granted in accordance with Company policy and applicable law." Agreement, Sec. 18(F). The meaning of the terms "Company policy" and "applicable law" is not self-evident. Determining that meaning requires interpretation of the CBA. That interpretation must precede any judgment about the maternity leave status of flight attendants under Puerto Rico's law.

5.      **Compensated Meal Periods**

Puerto Rico requires the provision of a "meal period" to employees "not before the conclusion of the third, nor after the commencement of the sixth consecutive hour of work." 29 L.P.R.A. § 283. Furthermore, the law requires that employers who permit work during the meal period "shall be bound to pay for such period or fraction thereof at a wage rate equal to double the rate agreed upon for regular work hours." Id. Again, Adames recommends that the claim be resolved by "the calendar and the clock." Executive suggests that any determination on the meal period entitlement requires "interpretation of the Agreement's 'duty time' requirements and the various types of duty status," as well as industry-specific practices, including the need to have flight attendants available throughout a flight's duration. (The Agreement does give flight attendants leave to

-14-

snack in flight or on the ground following flight time. Agreement, Sec. 27(I).) Even if the flight attendants are required to work through a statutory "meal period," Executive noted that it would be impossible to assess the remedy, payment at twice the hourly rate, without "interpreting the Agreement to establish what the applicable 'regular' rate would be." Again, we agree.

**6.      Compensation for Work on Day of Rest**

Puerto Rico requires that employees be paid double wages for working on the day of rest, which is defined as one day for every six working days. 29 L.P.R.A. §§ 295, 296. With no elaboration, Adames argues that "once the territorial jurisdiction of Puerto Rico is resolved for purposes of coverage of the labor laws, resolution of this claim depends upon a reference to the calendar." This argument evokes the now familiar response. The Agreement defines employees' on-duty days and days off. To assess whether the Puerto Rico law provisions for a "day of rest" are triggered, there must be an interpretation of duty time under the Agreement.

**7.      Vacation**

Puerto Rico prescribes seventeen days of vacation leave per year, at a rate of 1 5/12 days per month when at least 100 hours of work are performed. Mandatory Decree No. 38, Article VI. Under the Agreement, the parties have established a specific mechanism for accrual of leave time, as well as the procedures for using these

benefits.  For instance, the CBA allows for rest-time during travel to other jurisdictions, as well as ten days off per month in the flight attendant's domicile.  Agreement, Sec. 7.  Also, there is a mechanism for selecting and bidding for vacation blocks, based in part on seniority, with the possibility of trading.  Agreement, Sec. 10. Adames argues that any issue involving compensation for vacation leave can be resolved by consultation with the calendar and employees' pay records.  Executive counters that interpretation of several elements of the CBA would be required to assess any vacation leave claim, "specifically, how and why the Agreement: defines the period of flight attendant's duties; fixes the guarantee at seventy-two flight hours . . . ; provides for additional allowances for rest-time in other jurisdictions; provides for the selection and bidding of vacations; and accrues and limits . . . vacation leave."  We agree that determining entitlement to vacation leave requires interpretation of the Agreement rather than mere reference to it.  **8.**

**Christmas Bonuses**

Puerto Rico law requires employers to grant "employees who have worked seven hundred (700) hours or more. . . a bonus equivalent to 2% of the total wages. . . ."  29 L.P.R.A. § 501.  The CBA includes a "side letter" executed by Executive in March 1998 agreeing to grandfather the current practice of paying a "'Christmas Bonus' to only those Flight Attendants who are based in the San Juan domicile on the

date of signing this Agreement." Agreement, Letter N. Once again, Adames suggests that the CBA is not relevant and that examination of the company's financial records will resolve this claim. Executive argues that the letter establishing bonus eligibility must be interpreted, followed by a determination of what portion of flight attendants' compensation constitutes 'total wages' for purposes of the law. Again, we agree.

**9.    Sick Leave**

The Commonwealth provides for thirteen sick days with pay per year, accrued at a rate of 1 1/12 days for each month involving at least 100 hours of work. Mandatory Decree No. 38, VII. Under the CBA, paid sick time accrues monthly, at a rate of 2 1/2 hours for each month of active service, but the arrangement may differ for probationary flight attendants. Agreement, Sec. 11. As with vacation leave, several elements of the CBA must be interpreted to evaluate any claim, including assessment of flight versus duty hours and the method for accruing and limiting sick leave.

**III.**

**Conclusion**

The Commonwealth law claims asserted by Adames cannot be resolved independently of the CBA. They require more than mere reference to the terms of the Agreement, or to a calendar and a clock. Instead, the factual predicates triggering the applicability of the

-17-

Commonwealth laws at issue require an interpretation of the Agreement. The law is well-settled that "interpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." Lingle, 486 U.S. at 411 (footnote omitted).  The district court ruled correctly, in conformity with its earlier ruling in Burgos, that the claims of the plaintiffs involved "minor disputes" within the meaning of the RLA.  As such, they were preempted and subject to dismissal for lack of subject matter jurisdiction because of the prescribed mechanism for resolving minor disputes before the System Board of Adjustment.

**Affirmed.**