Michael BIAGINI, Plaintiff

v.

**BERKSHIRE CONCRETE CORPORATION,** Defendant

No. CIV.A. 01–30022–MAP.

United States District Court, D. Massachusetts.

March 6, 2002.

Timothy J. Morey, Freedman, DeRosa & Rondeau, North Adams, MA, for Plaintiff.

Kevin M. Kinne, Cain, Hibbard, Myers & Cook, P.C., Pittsfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

(Docket No. 10)

PONSOR, District Judge.

## I. INTRODUCTION

Michael Biagini, ("Biagini") has sued Berkshire Concrete Corporation ("BCC" or "defendant") for terminating his employment and refusing to re-hire him in violation of Sections 75A and 75B of the workers' compensation statute, MASS. GEN. LAWS ch. 152. Biagini claims that BCC discriminated against him when it eliminated his modified duty employment and refused to rehire him because he had received workers' compensation benefits.

Defendant now moves for summary judgment based on federal preemption. For the reasons set forth below, defendant's motion will be allowed.

## II. FACTS

The facts are essentially undisputed. In 1992, Biagini began working for BCC as a concrete mixer truck driver. (Docket No. 13, Exhibit A at ¶ 2). While employed at BCC, Biagini was a member of the International Brotherhood of Teamsters Local Union No. 404 (the "Union"). The Union and BCC were parties to a Collective Bargaining Agreement ("CBA"), which, in addition to describing the terms and scope of employment, contained procedures for the filing of grievances and arbitration. (Docket No. 12 at ¶¶ 4 and 150–152).

Under the CBA, "the decision of ... [an] arbitrator ... shall be final and binding upon both parties." (Docket No. 13, Exhibit B at ¶ 151). It is undisputed that, with regard to those employees within the purview of the CBA, lay-offs, re-hiring and dismissals were governed by the terms of the CBA. (Docket No. 11, Statement of Uncontested Material Facts at ¶¶ 16–17; Docket No. 13 at 3; Oral Argument).

On November 20, 1994, Biagini injured his back while working. *Id.* at ¶ 3. Shortly afterwards, he applied for and received workers' compensation benefits. *Id.* In March of 1995, BCC assigned Biagini to a modified duty position.[1] A few months later, he resumed his permanent position as a concrete mixer truck driver. *Id.* at ¶ 3; Docket No. 1 at ¶¶ 5–6.

In June of 1997, Biagini injured his back a second time. He again received workers' compensation benefits and was assigned to modified duty. (Docket No. 13,

---

1. The parties sometimes refer to "modified duty" positions as "light duty" positions. As they appear to be used synonymously, the court will use the phrase "modified duty positions" to refer to those positions that are less demanding physically.

Exhibit A at ¶ 3). In November of the same year, Biagini was reinstated to his position as a concrete mixer truck driver. (Docket No. 1 at ¶¶ 8–10). A few days later, on November 11, Biagini re-injured his back while working. He again received workers' compensation benefits, and his treating physician recommended that he be placed on modified duty. (Docket No. 13 at ¶¶ 4–6).

On December 1, 1997, BCC assigned Biagini to modified duty as a general helper in the parts room. *Id.* at ¶ 7. A few months later, on March 17, 1997, Ron DeAngelis, general manager of BCC, informed Biagini that his modified duty position was being eliminated and that he was being terminated. Biagini was also told that there were no other modified duty positions available to him. *Id.* at ¶ 8. That same day, Biagini sought reinstatement as a concrete mixer truck driver or a modified duty employee. *Id.* at ¶ 10. The day after his termination, Biagini learned that another individual had been hired for the same general helper position in the parts room. *Id.* at ¶ 9. Despite his demands to be reinstated, Biagini has not been re-employed in any capacity. *Id.* at ¶ 11.

Shortly after his termination, Biagini filed a grievance with the Union claiming that BCC violated his seniority rights when it refused to re-hire him. (Docket No. 12, Exhibit B at 2). On July 15, 1999, the Arbitration Board found that BCC did not violate the CBA when it refused to re-hire Biagini following his injury. The board found explicitly that "[t]here was no violation of the Collective Bargaining Agreement." *Id.* at 1.

On January 10, 2001, Biagini filed suit in the Berkshire County Superior Court in the Commonwealth of Massachusetts. The case was subsequently removed to this court. Biagini's complaint has two counts. In Count I, he claims that BCC violated MASS. GEN. LAWS ch. 152, § 75A when it failed to re-hire him for a suitable job that was available. In Count II, Biagini claims that BCC violated MASS. GEN. LAWS ch. 152, § 75B when it discharged him, refused to rehire him, and discriminated against him based on his receipt of workers' compensation benefits. On June 29, 2001, BCC filed for summary judgment, arguing that Biagini's claims were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

## III. *DISCUSSION*

### A. *Standard of Review*

A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). District courts are obligated "to review the facts in a light most favorable to the non-moving party, drawing all inferences in the non-moving party's favor." *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 258 (1st Cir.1994), *citing LeBlanc v. Great American Insurance Co.,* 6 F.3d 836, 841 (1st Cir.1993).

According to the Supreme Court, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies those facts that are material. *Id.* at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will prop-

erly preclude the entry of summary judgment." *Id.*

Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. *Analysis*

#### 1. *Section 301*

According to Section 301(a) of the LMRA:

Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in a district court of the United States having jurisdiction of the parties ....

29 U.S.C. § 185(a). Section 301(a) has been interpreted by the Supreme Court to mandate the application of federal common law to labor contract disputes. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), *citing Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The Supreme Court first addressed the preemptive effect of Section 301 in *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). There, the Court found that state law was preempted when a labor dispute arose from the alleged violation of a collective bargaining agreement. *Allis–Chalmers,* 471 U.S. at 209–210, 105 S.Ct. 1904, *quoting Lucas Flour,* 369 U.S. at 103–104, 82 S.Ct. 571. The Court explained that the application of federal law was necessary to

preserve both the uniformity of the law as applied to collective bargaining agreements, and the effectiveness of arbitration. *Allis–Chalmers,* 471 U.S. at 219, 105 S.Ct. 1904, *quoting Lucas Flour,* 369 U.S. at 105, 82 S.Ct. 571.

■ Twenty years later, in *Allis–Chalmers Corp. v. Lueck,* the Court extended the preemptive effect of Section 301 to suits alleging state-law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract ...." *Id.* at 220, 105 S.Ct. 1904. This test is set forth in *Lingle v. Norge Division of Magic Chef, Inc:*

If the resolution of a state-law·claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are states) is preempted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

486 U.S. 399, 405–406, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Hence, when deciding whether a state law claim is preempted, courts must ask "whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." *Flibotte v. Pennsylvania Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir.1997).

■ A state claim can depend on the meaning of one or more terms of a collective bargaining agreement in two ways: first, if the claim alleges conduct that breaches a duty arising out of the collective bargaining agreement, *Flibotte,* 131 F.3d at 26; *see also Fant v. New England Power Service Co.,* 239 F.3d 8, 15 (1st Cir.2001); and, second, if resolution of the state claim hinges on an interpretation of

the agreement. *Flibotte*, 131 F.3d at 26, *citing Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. 1904.

It is important to distinguish "interpretation" from mere "consultation." Consulting an agreement during the course of litigating a state law claim does not make the claim "dependent" for purposes of Section 301 preemption. *See Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), *citing Lingle*, 486 U.S. 399, 413 n. 12, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *see also Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 11–12 (1st Cir.2001). There must exist a *"real* interpretive dispute." *Lydon v. Boston Sand and Gravel Co.*, 175 F.3d 6, 11 (1st Cir.1999), *citing Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 42 (1st Cir.1997) (emphasis in original). "[P]urely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective bargaining agreement." *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 25–26 (1997), *quoting Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Moreover, Section 301 cannot be interpreted to preempt employee claims arising out of nonnegotiable rights conferred by state law. *Flibotte*, 131 F.3d at 26, *citing Livadas*, 512 U.S. at 123, 114 S.Ct. 2068.

### 2. *Preemption of Sections 75A and 75B*

Biagini claims that BCC discriminated against him when it discharged him and refused to rehire him in violation of Sections 75A and 75B(2) of the Massachusetts workers' compensation statute. According to § 75A:

Any person who has lost a job as a result of an injury compensable under ... [Chapter 152] shall be given preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available.

MASS. GEN. LAWS ch. 152, § 75A. This obligation to give beneficiaries of workers' compensation preference in hiring is reinforced by the duty to refrain from discriminating against such employees as stated in § 75B:

No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter ....

MASS. GEN. LAWS ch. 152, § 75B.

As noted, Biagini's claims are preempted if their resolution requires interpretation of the terms of the CBA or if the challenged conduct breaches a duty under the CBA. *Flibotte*, 131 F.3d at 26. Significantly, both §§ 75A and 75B conclude by stating:

In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement ... the collective bargaining agreement ... shall prevail.

MASS. GEN. LAWS ch. 152, § 75A.

As plaintiff conceded at oral argument, it is undisputed that the CBA between the Union and BCC covers employees assigned to modified duty positions. (Docket No. 13, Exhibit B at ¶ 13 and Schedule A). Further, the agreement includes provisions that govern employee lay-offs, rehiring, and dismissals. Paragraph 50 of the CBA states that "[s]eniority rights for employees shall prevail in layoffs and rehire providing that the employee is qualified to do the work that is available." (Docket No. 12, Exhibit A at ¶ 50).

Moreover, Paragraph 53 states that "[n]o employee shall be dismissed without justifiable cause nor shall he be dismissed without a hearing in the presence of this representative if he shall request the same." (Docket No. 12, Exhibit A at ¶ 53). Finally, the CBA contains a non-discrimination clause that forbids the employer and the Union from discriminating against any individual "with respect to hiring, compensation, terms or conditions or employment because of such individual's race, color, religion, sex, national origin, or age ...." (Docket No. 12, Exhibit A at ¶ 106). The clause adds that:

there will be no discrimination by the Employer or the Union against any employee because of his or her membership in the Union or because of an employee's lawful activity and/or support of the Union.

*Id.* at ¶ 107.

All of these provisions, regarding hiring, dismissal, and discrimination, could potentially conflict with §§ 75A and 75B. At a minimum, the court would have to interpret these provisions to determine whether they are inconsistent with the rights set forth in §§ 75A and 75B. *See Martin v. Shaw's Supermarkets, Inc.,* 105 F.3d 40, 44 (1st Cir.1997) (finding that plaintiff's claims under §§ 75A and 75B were preempted "not because the collective bargaining agreement *is* inconsistent with the state claims asserted, but because it *may* be so and requires interpretation."); *see also Bishop v. Bell Atlantic Corporation,* 81 F.Supp.2d 84, 88–89 (D.Me.1999) (finding that "in attempting to determine whether a statute is 'inconsistent' with a collective bargaining agreement ... the Court would be engaged in the forbidden interpretation of a CBA."). Because §§ 75A and 75B defer to a controlling collective bargaining agreement, and because interpretation of the CBA provisions

is required to determine whether an inconsistency exists, Biagini's claims depend on the interpretation of terms in the CBA. As such, Biagini's claims are preempted by Section 301 of the LMRA.

This conclusion is in accord with the decisions reached by the First Circuit. In *Magerer v. John Sexton & Co.,* the First Circuit interpreted § 75B, stating:

[T]o the extent that the collective bargaining agreement provides standards to govern the conduct underlying plaintiff's retaliatory discharge claim, the claim will be governed by the standards of the agreement, rather than by the standards of § 75B. And to that extent, claims under section 75B will require interpretation of the agreement and, therefore, will be preempted by Section 301.

912 F.2d 525, 529 (1st Cir.1990) (citations omitted). The *Magerer* court found the plaintiff's claim for retaliatory discharge under § 75B to be preempted by Section 301 because "the collective bargaining agreement at issue ... [contained] several provisions that could be construed to govern the conduct underlying plaintiff's ... claim." *Id.* at 530. The court found especially significant the broad management rights clause, which gave the employer the right to make judgments regarding, among other things, the "discharge of employees for proper cause." *Id; see also Fant v. New England Power Service Co.,* 239 F.3d 8, 15–16 (1st Cir.2001) (finding that broad management rights clause containing a discharge provision for proper cause was significant in deciding that "plaintiff's [state] claim was preempted because it could not be resolved without interpreting the CBA."). Similarly, the CBA before the court contains a clause for dismissal which states that "[n]o employee shall be dismissed without justifiable cause ..." (Docket No. 12, Exhibit A at ¶ 53).

The result in *Magerer* was underscored in *Martin v. Shaw's Supermarkets, Inc.* 105 F.3d 40 (1st Cir.1997). *Martin* involved claims that arose under §§ 75A and 75B. The *Martin* court expressed doubt over whether the plaintiff's claims would be preempted absent the proviso in the statutes because "apart from the proviso, the elements of Martin's state-claims [appeared] to be independent of bargaining agreement provisions." *Martin*, 105 F.3d at 43. Nevertheless, the court found that Martin's state law claims were preempted. *Id.* at 44.

In an effort to salvage his case, plaintiff argues that preemption cannot apply in the context of a discrimination claim. The court might consider this argument if plaintiff was bringing a garden variety employment discrimination suit under, for example, MASS. GEN. LAWS ch. 151B (the Massachusetts anti-discrimination statute). Congress recognized the independent validity of state anti-discrimination laws in Title VII, 42 U.S.C. §§ 2000e–5(c) and 2000e–7. *See Lingle*, 486 U.S. at 411–412, 108 S.Ct. 1877.[2] As the *Lingle* Court noted, "[i]n the typical case a state tribunal could resolve either a discrimination or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." *Lingle*, 486 U.S. at 412, 108 S.Ct. 1877; *see also Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166, 171 (1st Cir.1998) (finding no preemption in a controversy involving claims under MASS. GEN. LAWS ch. 151B and the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*, because these statutes "exist independently of [a] collective bargaining agreement and do not require interpretation of [an] agreement.") (citations omitted); accord *Welch v. General Motors Corp.*, 922 F.2d 287, 290 (6th Cir. 1990), *quoted in Fant v. New England Power Service Co.*, 239 F.3d 8, 15 n. 7 (1st Cir.2001) (finding that "independent state statutory rights could be asserted, even if the CBA also provided a remedy for discrimination. In such situations, the court generally reasons that rights created by state law are independent, non-negotiable, and 'not inextricably intertwined with the collective bargaining agreement.'").

Obviously, plaintiff has not in this case claimed a violation of MASS. GEN. LAWS ch. 151B. Plaintiff has brought this action under the state workers' compensation statute, which explicitly defers to the CBA, when its terms are inconsistent with the rights afforded under Sections 75A and 75B. Moreover, as noted, the First Circuit has repeatedly found Section 75B claims to be preempted in cases that assert retaliatory discharge in violation of these statutes. *See Sullivan v. Raytheon Company*, 262 F.3d 41 (1st Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 931, 151 L.Ed.2d 893 (2002); *Martin v. Shaw's Supermarkets*, 105 F.3d 40 (1st Cir.1997); *Magerer v. John Sexton and Co.*, 912 F.2d 525 (1st Cir.1990). Because plaintiff's claims are preempted by Section 301 of the LMRA, federal law governs this case, and summary judgment must be allowed.[3]

---

**2.** Under subsection 5(c), aggrieved individuals must wait sixty days after the commencement of a proceeding under state law before filing a Title VII charge. 42 U.S.C. § 2000e–5(c). Furthermore, subsection 7 adds that:

> [n]othing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law

of any State or political subdivision of a State . . .

42 U.S.C. § 2000e–7.

**3.** It is possible that Biagini may still have, or might have had, recourse to arbitration on his claim of retaliatory discharge. The decision of the arbitration board is unclear with regard to the issues that were actually arbitrated. At the arbitration hearing, Biagini claimed that

It is difficult to make this ruling without a feeling of uneasiness. The outcome leaves Biagini without access to a judicial forum for his claim of discrimination under the workers' compensation statute. However, as the First Circuit noted in *Martin* this outcome could have been avoided if the parties had included a provision in the CBA that simply stated: "nothing in the agreement is intended to create management rights inconsistent with any workers' rights under sections 75A and 75B." *Martin,* 105 F.3d at 44. Given the wording of the CBA in this case, and the controlling First Circuit authority, this court has no alternative but to conclude that the LMRA preempts plaintiff's claim.

### IV. *CONCLUSION*

For the reasons set forth above, defendant's Motion for Summary Judgment is hereby ALLOWED.

A separate order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum, Defendant's Motion for Summary Judgment (Docket No. 10) is hereby ALLOWED. The clerk will enter judgment for the defendant.

It is So Ordered.

BCC failed to rehire him in violation of his seniority rights. (Docket No. 12, Exhibit B at 2). It is not clear whether the issue of discrimination based on receipt of workers' compensation benefits was raised or addressed.